# HERRELL *v.* DONOVAN.

## JOHNSON *v.* SAME.

MECHANICS' LIENS; PRINCIPAL AND SURETY; SUBCONTRACTORS,
    RIGHTS OF.

1.  Subcontractors of a subcontractor are not entitled to a lien under
    the Mechanics' Lien law in force in this District; *following*
    Leitch *v.* Emergency Hospital, 6 App. D. C. 247.
2.  A material man does not become a subcontractor and entitled to the
    lien given by the statute, by the acceptance by the contractor of
    an order in his favor given by a subcontractor.
3.  The surety on a building contractor's bond against liens is pre-
    cluded from asserting a mechanics' lien as subcontractor, and
    he is not discharged from his contract of suretyship by advance
    payments by the owner to the contractor when not made in
    exact accordance with the contract, if no one is prejudiced
    thereby, especially where such payments were approved and
    ratified by him.
4.  The rights of subcontractors under the Mechanics' Lien law are de-
    pendent upon the terms of the contract between the owner and
    contractor and the state of accounts between them.

Nos. 502 and 503.    Submitted October 23, 1895.    Decided December
    2, 1895.

HEARING on appeals from a decree adjusting the claims
of lienors in a suit to enforce mechanics' liens.    *Affirmed*.

The COURT in its opinion stated the case as follows:

These are several and separate appeals from a decree of
the Supreme Court of the District of Columbia in a suit in
equity instituted to enforce certain claims of mechanics'
liens.

Jeremiah E. Donovan, one of the appellees, being the
owner of a certain lot of ground in the former town of
Georgetown, in this District, entered into a contract, on
February 28, 1894, with a builder, William A. Vaughn,
one of the defendants in the court below—although his

name does not appear in this court either as that of an appellant or as that of an appellee—to build for him two houses and a stable on said lot, in accordance with the plans and specifications therefor prepared by Mr. Charles A. Harkness, architect, and under the architectural supervision of the said Harkness.   The price to be paid by Donovan to the contractor for the work was $8,799, in seven several instalments at seven different stages of the work, upon the architect's certificate that the specified work was done and that the specified instalment thereon was due and payable.

The contract, which was in writing, provided that the last instalment of the price to be paid—namely, $1,899—should become due and payable when the buildings were completed according to the plans and specifications, and there was furnished by the contractor to the owner a waiver of liens from all subcontractors who had furnished labor or materials to the work; that the buildings should be delivered to the owner complete and free from all liens whatever and all right to file liens; and that the contractor should give a satisfactory bond in the sum of $8,000 to complete the work in accordance with the terms of the contract. The required bond was given, with Allen S. Johnson, the appellant in cause No. 503, as the surety in it; and Vaughn entered upon the work of construction.

He entered into subcontracts with several persons or firms—among others, with the appellees, Robert Leitch & Sons, C. A. Schneider's Sons, Hugh Reilly, Samuel E. Rabbitt, Joseph B. Lanahan and John B. Hammond, as well as the appellant, Allen S. Johnson, the surety on his bond, to do certain specified portions of the work for him.   Although some difficulties seem to have arisen very early in its progress, the work proceeded without serious embarrassment until about the time of the completion of the sixth stage and the time for the payment of the sixth instalment of the contract price, when Vaughn, for some reason, found himself unable to go on and abandoned the enterprise.   It seems that Johnson, the surety, then took up the work for

about a week; but he also speedily abandoned it. Thereupon Donovan himself took charge of the work and undertook to complete the buildings; which he accomplished at a cost to himself of $470.22, about September 15, 1894. Vaughn's abandonment was in the latter part of June or in the beginning of July, 1894.

After deduction of the cost of completion, and of the sum of $8 paid by Donovan for insurance which Vaughn had obligated himself and failed to pay, Donovan had in his hands the sum of $1,420.78, of the last instalment of the contract price for the construction of the buildings; and this sum he paid into court in the present suit.

As already intimated, Vaughn had become involved in difficulties very early in the progress of the work. He was carrying on some other buildings at the same time, and found himself repeatedly in need of money. When the first stage of the work on Donovan's buildings had been about half done, he requested from Donovan a payment of $600 on account. No money was then due under the contract; but the architect certified that work to the value of that sum and upwards had been done, and assured Donovan that he could safely pay the amount requested; and Donovan, as a matter of accommodation to Vaughn, did pay that amount. In a few days thereafter, the first stage of the work was fully completed; and the residue of the first instalment of the money was paid by Donovan upon the architect's certificate.

The second, third and fourth payments seem to have been made only as they became due under the terms of the contract. The fifth instalment was, in part, anticipated. On May 8, 1894, Vaughn solicited a payment of $600; the architect certified that the work had so far progressed as to justify it; and Donovan paid the money. On May 12, 1894, the whole instalment became due, and Donovan paid the residue, which was $450.

The sixth instalment was somewhat broken up. On June 1, 1894, on similar assurances as before from the architect,

Donovan paid Vaughn $400. On the same day, he paid $200 to one Campbell, a subcontractor, on Vaughn's order. On June 8, 1894, he paid Vaughn $300. The sixth instalment of the work had then been completed, with the exception that some trimmings, of the value of about $150, had been condemned by the architect, and Vaughn was required to take them out. To insure the proper replacement of this condemned work, Donovan reserved $150 from the sixth instalment of the money, which amounted to $1,050.

Vaughn's embarrassments, whatever they were, seem about this time to have become too great for him to cope with, and he abandoned the work. There seems to have been no surrender by him of the work, nor any communication to Donovan of his inability to proceed; but merely an abandonment by him. Donovan notified him and his surety, that if the work was not completed by August 1, 1894, he would take control of it himself and finish it at their risk and cost.

It was probably about this time that Johnson, the surety, took charge of the work for a short time, as has been mentioned. Previously to his doing so, however, he had induced Donovan to forego his dissatisfaction with the condemned trimmings, and to pay Vaughn the $150 which had been retained from the sixth instalment. The record shows that on June 23, 1894, in pursuance of an order in writing from Johnson to Donovan, requesting the latter to "pay to Vaughn the sum of $150 in full of the sixth payment," Donovan did pay that sum to Vaughn, and took his receipt therefor.

Notice of Vaughn's difficulties and of his failure to pay his employees and others had come to Donovan early in the course of the work, and as early as April 10, 1894, John E. Herrell & Company, the appellants in cause No. 502, had notified Donovan in writing that they were furnishing brick to Vaughn, and that they intended to hold the buildings under the lien law. But the notice contained no statement of the amount of their claim; and no notice o

lien under the law was filed in the office of the clerk of the Supreme Court of the District until July 12, 1894. Then and thereafter notices of lien were duly filed, as follows:

| | | | | |
|---|---|---|---:|---:|
| 1894, July 12. | John E. Herrell & Co. . . . | $765 | 92 |
| July 18. | Robert Leitch & Sons . . . | 53 | 11 |
| July 31. | John B. Hammond . . . . | 896 | 52 |
| Aug. 4. | Hugh Reilly . . . . . . | 145 | 00 |
| Aug. 6. | C. A. Schneider's Sons . . : | 70 | 65 |
| Sept. 4. | Samuel E. Rabbitt . . . . | 433 | 00 |
| Sept. 7. | John B. Lanahan . . . . | 290 | 00 |
| Oct. 3. | Allen S. Johnson . . . . | 642 | 92 |

$3,297  12

The present suit was instituted on August 3, 1894, by the appellee, John B. Hammond, to enforce his lien for $896.52, the amount of his claim ; and all the others above mentioned, who had filed notices of lien, came in by petition, and were made parties to the suit. Donovan and Vaughn were made defendants by Hammond to his bill, which prayed a sale of the real estate mentioned in order to satisfy the lien, and also a personal judgment against Vaughn, under the provisions of the Mechanics' Lien law, in the event of the insufficiency of the real estate to satisfy the demand.

Vaughn did not answer the bill, so far as the record shows ; nor does it appear that he was served with process, or that any other proceedings were had against him. He is not mentioned in the decree of the court below, except incidentally. But all this is unimportant, in the view which we take of the case.

Donovan filed his answer to the suit. In it he denied the right of the complainant, or of the intervening petitioners, or of any of them, to any relief as against him or his property, except as to the sum of $1,420.78, admitted by him to be in his hands, and which he paid into court for distribution to the parties, as the court might determine.

Testimony was taken. Upon the hearing, the Supreme Court of the District of Columbia rendered a decree, whereby

it discharged the property of the defendant, Donovan, from all the liens filed against it, dismissed the bill and the petitions as to him; disallowed the claims of Herrell & Company and of Allen S. Johnson, and also $300 of the claim of Hammond, which seems to have been otherwise provided for to that extent; and distributed the fund paid into court by Donovan, after the payment of the costs of the suit, as follows:

|  |  |  |
|---|---|---|
| To Robert Leitch & Sons | . . | $ 53 11 |
| " John B. Hammond | . . . | 596 52 |
| " Hugh Reilly | . . . . . | 145 00 |
| " C. A. Schneider's Sons | . . | 70 65 |
| " Samuel E. Rabbitt | . . . | 433 00 |
| " John B. Lanahan | . . . | any balance. |

Priority was given by the decree to the parties whose claims were allowed, in accordance with the dates of their filing their several notices of lien.

From this decree Herrell & Company and Allen S. Johnson have appealed. There is no appeal by Hammond or Lanahan; and there is no reason for appeal by the others, since they are allowed their claims in full, and the fund is sufficient to pay them in full.

*Mr. O. B. Hallam* for the appellants, Herrell & Co.:

1. Herrell & Co. were not subcontractors of a subcontractor, but furnished materials under immediate contract with the principal contractor, Vaughn. The case is therefore entirely different from that of *Monroe* v. *Hannan*, 7 Mack. 197, and that of *Leitch* v. *Hospital*, 6 App. D. C. 247. The contention that they merely took Vaughn's personal obligation and acted on his personal credit and not the credit of the building is disposed of by the case of *Central Trust Co.* v. *Railroad Co.*, 68 Fed. Rep. 90. See also *McMurray* v. *Brown*, 91 U. S. 266; *Railroad Co.* v. *M. Co.*, 109 U. S. 702; *Van Stone* v. *Mfg. Co.*, 142 U. S. 136.

2. Being the first claimants to file notice of lien, they were entitled to priority. Phillips, Mech. Liens, sec. 256 ; *Superintendent* v. *Heath,* 15 N. J. Eq. 22 ; *Hall* v. *Hinckley,* 32 Wis. 362 ; *Kaylor* v. *O'Connor,* 1 E. D. Smith (N. Y.) 772.

*Mr. Samuel Maddox* for the appellant Johnson :

1. Donovan having failed to observe the obligations of the contract without the knowledge or consent of Johnson, the latter is released from his bond obligation, and his right of lien is restored. *Miller* v. *Stewart,* 9 Wheat. 703 ; *Trustees* v. *Heise,* 44 Md. 479 ; *Priming* v. *Skipper,* 71 Md. 350; *Simonson* v. *Grant,* 36 Minn. 441.

2. There is no priority as between persons entitled to mechanics liens. Phillips, Mech. Liens, sec. 251 ; *Crowell* v. *Gilmore,* 18 Cal. 371.

3. The act of July 2, 1884 (23 Statutes, 64), enlarging chapter 20, R. S. D. C., is intended to give the subcontractor, material man, journeyman and laborer a lien for the value of the material by them furnished, or the work by them done, irrespective of the condition of the account between the owner and the principal contractor.

The purpose of this statute evidently is to put the contractor, the subcontractor, the material man and the laborer upon an equality with reference to a lien upon the property, each having an equal right to claim and to enforce it, upon showing that he comes within the enumerated class, and has done work or furnished material for or about the building. Indeed, the lien of the subcontractor is paramount to that of the principal contractor, for in any action that might be·brought by the latter against the owner for the contract price, or any part of it, the owner would be allowed to set off all payments made by him in settlement of valid liens against his property preferred by mechanics or material men. In one respect only are the liens of the contractor and subcontractor of equal force—in that they

are preferred to all judgments, mortgages, deeds of trust and other encumbrances which attach subsequent to the commencement of the work on the building.

The purpose and intention of the act are to secure to mechanics and others payment for labor done and materials found.  *Winder* v. *Caldwell*, 14 Howard, 445.

The liens attempted to be enforced in this proceeding do not exceed the contract price of the buildings.  They aggregate about one-third as much.  But the court below construed payments voluntarily made by Donovan to Vaughn as part of the total lien, and deducted them from the contract price, although Vaughn never asserted a lien by filing the " notice prescribed by the second section " of the act.  In other words, the court below construed the law as if it read that the liens shall not exceed or be enforced for a greater sum than the amount " due from the owner to the contractor at the time of the notice or subsequently," thus, in effect, incorporating into the new law the language of the old.  This simply restores the *right of garnishment*, the very thing the lawmakers manifestly intended to do away with.

The filing of the notice is not the inception of the lien but simply an incident to its enforcement.  When the work is done or the materials furnished the right of lien is complete.  *Treush* v. *Shryock*, 51 Md. 173.  Then, if the lienor wishes to avail himself of his right, the statute specifies how he must proceed, and appellant Johnson has complied with all requirements.

The specifications of the building contract called for certain stoves and ranges, and Donovan is charged with notice, even before the structure is begun, that the man who furnishes them, if not paid for his labor and material, will have a lien therefor.  *Lumber Co.* v. *Murphy*, 64 Iowa, 165 ; *Lumber Co.* v. *Woodside*, 71 Iowa, 359.  In making payments to Vaughn, therefore, Donovan did so at his own risk and with full notice of appellant's rights.

The enacting clause of the new law gives appellant a *lien*

for his labor and materials. A lien has been defined as
" an obligation or claim, annexed to or attaching upon any
property, without satisfying which such property cannot be
demanded by the owner." The right is denominated *jus
ad rem.* The holder of a mechanics' lien has an insurable
interest in the property. *Ins. Co.* v. *Stinson,* 103 U. S. 25.
By doing work and furnishing material for Donovan's ben-
efit, Johnson acquired a valuable property right of which
he should not be deprived without his consent. And yet,
under the rule adopted in the court below, Johnson may be
deprived of this *jus ad rem* by dealings between the owner
of the property and the holder of a subordinate right of
lien, to which dealings Johnson was not a party and of
which he had no knowledge. See *Colter* v. *Freese,* 45
Ind. 102.

Statutes giving liens to mechanics and laborers are to be
liberally construed so as to afford the security intended.
*Davis* v. *Alvord,* 94 U. S. 549; *Bullock* v. *Horn,* 44 Ohio
St. 424; *McMurray* v. *Brown,* 91 U. S. 266; *Van Stone* v.
*Stillwell, &c., Co.,* 142 U. S. 136.

In these days of diversified trades and occupations, the
principal contractor is virtually a superintendent employed
by the owner to see that his building is erected according
to plans and specifications prepared by an architect. The
necessary subcontracts made by this superintendent are, by
operation of the mechanics' lien law, the act of the owner,
hypothecating his own estate to the extent of the price
agreed to be paid for the material and labor required to
complete the building. See *Donahay* v. *Clapp,* 12 Cush.
441; *O'Neil* v. *St. Olaf's School,* 26 Minn. 329; *Laird* v.
*Noonan,* 32 Minn. 360.

It is argued that to construe the law to mean that each
subcontractor has the right to require payment for his labor
and materials, irrespective of what the owner had paid to
the contractor, would be unjust, as possibly requiring the
owner to pay several times over the amount of his contract,
but a little consideration shows the fallacy of this argument.

All that he could be required to pay would be what he himself had agreed to pay. If he employs an irresponsible contractor, and neglects ordinary business precautions in making payments to him, he may in the end have to pay more than the contract calls for. But this he can readily avoid by requiring the contractor to produce proper receipts from subcontractors ; or he can protect himself against the possibility of loss by requiring a good and sufficient bond conditioned for the full performance of the building contract. See *Trust Co.* v. *Railroad Co.,* 68 Fed. Rep. 90.

*Mr. F. P. B. Sands, Mr. E. H. Thomas, Mr. D. O'Callaghan* and *Mr. John Ridout* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court :

1. We will consider first the appeal of John E. Herrell & Company.

The facts in regard to their connection with the work are these : Vaughn, the builder, had contracted with one R. E. Cozzens to do the brick work on Donovan's houses and to supply the brick for the purpose. Cozzens was a bricklayer, but not a dealer in brick ; and he applied to Herrell & Company, who were dealers in brick, to furnish to him the necessary brick for the work. John F. O'Neill, the member of the firm of Herrell & Company with whom Cozzens had his negotiation, testified that his firm would not furnish any brick to Cozzens, unless he paid for them in advance ; but that nevertheless he bargained with the latter to let him have the brick upon his giving an order upon Vaughn for payment therefor and procuring the acceptance of the order by Vaughn. The order and acceptance were as follows :

"WASHINGTON, D. C., March 20, 1894.
" MR. WM. A. VAUGHN.

" SIR : You will please pay John E. Herrell & Co. the amount of bill that may be rendered by them for the brick to used in the construction of two houses on 31st street

between Road and Q streets, N. W., for Mr. J. E. Dono-
van ; payments to be made as follows :

$200 to be paid when 2nd floor joists are on ;
$300  "    "    "    roof is on ;
$200  "    "    "    (house) plastered ;

Balance at completion of houses, and charge the same
to my account.

                    " Respectfully yours,
                         (Signed)    " R. E. Cozzens.
(Written across the face : "Accepted March 20, 1894.
                    (Signed)    " Wm. A. Vaughn."

O'Neill, in his testimony, says, that he had a contract
with Vaughn to furnish the brick ; and the strenuous attempt
in the argument before us is to show that Herrell & Com-
pany were immediate subcontractors with Vaughn. But
O'Neill distinctly admits that the only contract whatever
which he had with Vaughn was the contract evidenced by
the order and acceptance that have been set forth. It may
be proper to add, too, that he stated to Donovan, both
orally and in writing, that his firm had a contract with
Vaughn to furnish the brick ; that Vaughn was not paying
them as he had agreed to do ; and that Donovan had said
that he would see to it, and see that they were paid.

The question then presented on behalf of Herrell &
Company is, whether in this condition of things they were
subcontractors of Vaughn in immediate contractual rela-
tions with him such as that they were thereby entitled to
hold and claim a lien upon the property of Donovan under
the Mechanics' Lien law.

We are very clearly of opinion that they were not so
entitled. In the case of *Leitch* v. *Emergency Hospital*, 6
App. D. C. 247, we held that subcontractors of a subcon-
tractor were not entitled to claim a lien under the Mechan-
ics' Lien law in force in this District ; and that only
subcontractors in the first degree—that is, persons in im-
mediate contractual relations with the builder or principal
contractor—were entitled by the law to hold such lien. We

are entirely satisfied with that decision, and reaffim it; and we think that the rule there laid down is antagonistic to the claim of the appellants Herrell & Company in this case.

An ingenious and able argument has been made to show that Herrell & Company were, in the sense of the law and of that case, immediate subcontractors of Vaughn. But the writing produced, and which is distinctly admitted to have been the only contract, or evidence of contract, between Vaughn and the firm of Herrell & Company, to our mind conclusively negatives this contention. That writing does not show any contract on the part of Herrell & Company to furnish bricks to Vaughn; it shows no liability on the part of Herrell & Company which Vaughn could be entitled to enforce. As between Vaughn and that firm, it is an ordinary and well known contract of guaranty, by which Vaughn guaranteed to Herrell & Company the performance by Cozzens of a contract between the latter and that firm. The money to be paid by Vaughn was the money of Cozzens or the money that was to come to Cozzens, under the contract between Cozzens and Vaughn; and that money was to be paid to Herrell & Company, in a certain contingency, as the money of Cozzens, and to be charged to Cozzens in the account between the latter and Vaughn. There is no contract here between Vaughn, on the one side, and Herrell & Company on the other, whereby the latter were under any obligation to deliver brick to Vaughn, or whereby Vaughn was under any primary or direct obligation to pay Herrell & Company. The contract was that Vaughn would pay Herrell & Company if Herrell & Company would furnish brick to Cozzens and enter into contractual relations with Cozzens to enable the latter to carry out his contract with Vaughn. These are not the contractual relations required to give one a right of lien under the Mechanics' Lien law.

Nor is there here any question of novation, or of anything being taken out of the contract between Vaughn and Cozzens, and made the subject of contract between Vaughn

and Herrell & Company.   It was competent for the parties to make such an arrangement, if they thought proper ; but the proof is not of any such arrangement, but of an entirely different one—an arrangement, in fact, wholly inconsistent with the theory of novation.

We think that Herrell & Company did not become immediate subcontractors of Vaughn, and therefore that the court below did not err in denying their right to a lien under the law.   Their remedy is against Cozzens on the primary contract, or against Vaughn on the acceptance.

2. The appeal of Allen S. Johnson is next to be considered.

Johnson, as stated, was the surety on Vaughn's bond, which required the discharge of all liens on Donovan's property preparatory to the final payment.   Johnson was also a subcontractor for the heating and tinning of the buildings.   Of course, as surety in the bond, he was precluded from filing any lien as subcontractor, unless he was in some way discharged from his contract of suretyship. He claims to have been so discharged by the act of Donovan in making his alleged premature payments to Vaughn before payments became due under the contract ; and it is argued on his behalf that this conduct of Donovan was a violation of the contract between the latter and Vaughn, such as to discharge the surety.

But we fail to see wherein there was any violation of contract by Donovan.   At most, the partial payments made by him were merely equitable subdivisions of the payments stipulated to be made ; and the work which they represented had all been actually performed.   These payments injured no one.   No rights of other persons had intervened when they were made.   The payments, in fact, were for the benefit of Vaughn, the principal in the bond ; and they did not, and could not, prejudice the rights of Johnson as surety.   The conduct of Donovan throughout seems to have been honest, straightforward and liberal ; and it deserves credit and commendation, rather than that he should be charged with a violation of duty.

A more pointed answer, however, to the contention on behalf of the appellant Johnson, is that he approved and ratified these payments; and he cannot now be heard to controvert their propriety. He specially requested in writing the payment of the $150, withheld for a short time out of the sixth instalment; and he requested it as in full of that instalment. Necessarily, therefore, he ratified all the previous payments. It would be contrary to all equity now that he should repudiate what he previously sanctioned.

This, we think, fully disposes of Johnson's claim, and of the argument on behalf of it. But on his behalf another proposition has been earnestly advanced and strenuously argued, to which, as it seems to be a frequently recurring proposition, it seems proper that we should give some consideration. This proposition is to the effect, that claimants of liens under the mechanics' lien laws are entitled to disregard the contract between the owner of property and his builder or contractor; that the right of lien is independent of contract, and arises exclusively by operation of the statute whenever labor is done or materials provided for a building; that consequently, the liens of laborers, material men, and subcontractors, may be enforced to the full extent of the value of the property, within the limitation of the contract price, regardless of any payments made or stipulated to be made by the owner of the property to the builder or contractor; and that, whatever may be the express terms of the contract between the owner and the builder, whatever may be the times or terms of payment stipulated or the the amount of payment that has actually been made before any notice is given, the owner of the property remains liable, until the end of the period limited by the statute for the filing and enforcement of liens, to pay to subcontractors, to the whole extent of the original contract price, the amount of any liens that may be filed within that period. And it is asserted, as a logical conclusion from this proposition, that any and all provision in the contract between the owner and the builder for the payment of any money what-

ever on the contract before the expiration of the time for filing liens, imposes the risk upon the owner of having to pay twice for the building, or at all events to make double payments to the extent of the liens claimed.

The conclusion stated is undoubtedly a legitimate deduction from the proposition advanced ; and the proposition, therefore, demands from us the careful consideration which so startling a conclusion warrants.

The appellant, Johnson, of course, has no more standing in court to sustain this proposition than any of the other positions taken by him.   By his suretyship upon the bond he guaranteed the execution of the contract, which, even upon the extraordinary theory here advanced, is only a rash contract, and certainly not an illegal one ; and he cannot repudiate for his own benefit the contract which received validity and effect only through his suretyship.

But the question is one which, as we have said, seems to be of frequent recurrence ; and we think that it is proper to set it at rest as far as we may.

It is insisted that the subcontractor is not bound by the contract between the owner of the property and the builder; that his lien is independent of the builder and superior to any claim by the latter ; that it is payable, therefore, independently of any liability of the owner to the builder ; and that, inasmuch as the aggregate claims of the subcontractors may amount to the whole contract price stipulated between the owner and the builder, the owner is never safe in making any payment, or agreeing to make any payment, to the builder, until it is ascertained that all liens are discharged or satisfied.

The vice of this argument is in the grave misapprehension which it involves of the statement found in the decisions under the mechanics' lien laws, that the lien given by these statutes is independent of contract.   Undoubtedly it is a correct exposition of the law to say that the lien given by the laws is independent of contract.   But this does not mean that the lien can arise without pre-existing contract.

Indeed, under our system of jurisprudence and in view of our constitutional guarantees, it does not seem to be possible to conceive the existence of a lien in favor of one person against the property of another without some pre-existing contract to give occasion for it. A lien cannot be forced on one against his will. A lien, after all, is but an extraordinary statutory means for enforcing a contract; and only as the means is independent of the end to be obtained is the lien independent of the contract, of which the legislative authority has made it the necessary incident. Only a contractor or subcontractor can have a lien: that necessarily means that there must be a contract before there can be a lien; and the right to a lien necessarily requires for its support a pre-existing right to compensation under some contract. This would seem to be too clear to require elaboration, or citation of authority.

Similarly, in the same sense, it is not correct to say that subcontractors, with reference their right of lien, are not bound to any extent by the contract between the owner and the contractor. On the contrary, that contract is the chart by which not only the contractor, but all subcontractors, shall be bound, not as between themselves perhaps, but certainly with regard to the owner of the property. Could it reasonably be said that, if an owner has contracted with his builder for a structure of stone, the latter may contract with subcontractors to give him brick or wood? So far as the builder is the agent of the owner with reference to the subcontractors, he cannot exceed the authority given to him. The subcontractors are bound to know his authority; and they cannot hold the owner, by way of lien or otherwise, where he did not authorize the work for which it is desired to hold him. The statutory lien is independent of contract; but the contract between the builder and the owner contains the limitations under which, and with reference to which, the right of lien may be exercised. The subcontractor can have no greater right against the owner than has the contractor himself, ex-

cept, perhaps, that the contractor may himself stipulate that he will not have recourse to his statutory lien, but may not stipulate away the right of the subcontractor to recur to it. But even this exception by some of the authorities has not been allowed.

It is in the means of the enforcement of his contract rights, and not in the contract rights themselves, that the subcontractor is independent of the principal contractor, and that his lien is independent of the principal contractor's lien, and even superior to it. But the contract rights of all the parties are to be measured by their relative rights, powers, and duties, as determined by their several agreements between themselves, with special reference to the primary contract between the owner and the builder, to which all other contracts must conform.

Apparently antagonistic to this view, and seeming to justify the proposition of the appellant, is the case of *The Central Trust Company* v. *N. I. & B. Railroad Co.* 68 Fed. Reporter, 90, recently decided in the Sixth Federal Circuit under the mechanics' lien laws of the State of Kentucky, or rather the special mechanics' lien law of that State enacted with reference to railroads, canals, and other works of public improvement.

The statute in question provides that all persons who perform labor, or who furnish labor, materials or teams by contract with the owner, or by subcontract thereunder, shall have a lien which shall be prior and superior to all other liens theretofore or thereafter created ; that the liens should in no case be for a greater amount in the aggregate than the contract price of the original contractor, and should the aggregate exceed the original price there should be a *pro rata* distribution ; and that no lien should attach unless the person who performed the labor or furnished the labor, material, or teams, should, within sixty days after the last day of the last month in which any labor was performed, or labor or material furnished, file a statement setting forth the amount due, &c. With this statute in force, a railroad

company entered into contract with a construction company for the construction of its road, or some part, whereby it was stipulated that the construction company should receive and accept bonds of the railroad company in payment of the work as the work progressed. The contract contained no provision to secure the railroad company against the liens of subcontractors, and no provision whereby the railroad company might deal directly with the subcontractors. The construction company entered upon the performance of the contract, and bonds were delivered to it from time to time. But embarrassments arose. The construction company failed in its payments to subcontractors; and legal proceedings were instituted in which various contractors intervened. The court held that the lien given by the statute originated with the beginning of the work or the delivery of materials; and continued as an incipient or inchoate lien until perfected by filing the required notice, or lost by failure to do so within the prescribed time; that the lien of a subcontractor in the first degree was independent of the lien of the principal contractor, or of a waiver or loss thereof; and that neither the contract with the principal contractor, nor payments thereunder in accordance with the contract, could affect the rights of the subcontractors to their liens upon the property at any time within the statutory period. And accordingly the claims of the subcontractors in that case were sustained, although the railroad company had already made payment under its contract to the principal contractor, and no notice of lien was given until after such payment. In its opinion, the court remarked that in view of the existing law, the railroad company made its contract at its own risk, and with the liability of being compelled to pay a second time for the work, once to the contractor, and again to the lien-holders.

It will be remarked that the statute construed in that case deals with railroads and other public works, and with corporations and franchises, over which the State had plenary power, and for which it could impose any terms which it

thought proper as the conditions of existence and the exercise of power within the territorial limits of the State.

The statute does not purport to deal with the rights of natural persons who are owners of property and contract for the construction of buildings thereon. There seems to be another statute of the State of Kentucky for that purpose. It appears to us, therefore, that the decision cited should not be held to be applicable beyond the special case with which it deals. Any construction of it which would extend its application to cases such as that now before us, we would feel ourselves constrained to reject. Such a construction of our own law would immediately raise the question of the constitutionality of our statute ; and it is the rule of law that statutes should always be construed so as to give them effect and validity, rather than that they should receive a construction that would make them invalid or doubtful. Sedgwick on Statutory and Constitutional Law, chap. 6 ; Potter's Dwarris on Statutes, chap. 5.

We think the ruling of the Supreme Court of Pennsylvania in a similar matter in the case of *Schroeder* v. *Galland*, 134 Pa. St. 279, is consonant with sound sense and good logic. That court said :

" It cannot be questioned for a moment that a subcontractor, who undertakes the construction, in whole or in part, of a building, under a contract with the principal contractor, is absolutely bound by all the plans and specifications expressed in the original contract of the owner with the builder. He must conform to the original contract in all matters, and in the minutest detail, precisely as the builder would be obliged to do. It is most obvious that he cannot depart in any respect either from the designs, the dimensions, the materials, the plans, shapes, and sizes, that are expressed in the original contract ; and the reason is most manifest. He is the representative of the builder. * * * He cannot furnish stone when the contract requires marble, or bricks when stone is required or designated, or one kind of stone when another kind is expressed, or wood

instead of bricks.   *  *  *   In other words, subcontractors necessarily have notice of the terms and stipulations of the builder's contract with the owner ; and that means, not a part, but all of those terms and stipulations.   Upon the plainest legal principles, applicable in all other cases, they cannot have the benefit of the builder's contract without accepting the conditions upon which those benefits are conferred.   If they could, they would defeat the explicit contract of the owner upon a point without which, it may easily be, he would never have consented to it.   If the law would tolerate this method of dealing with building contracts, it would only be necessary for the original contractor to sublet his contract by portions to different persons, and the prohibition against liens would be destroyed, and a contract would be enforced against the owner to which he never consented.

" There is no hardship to subcontractors in enforcing a provision prohibiting liens against them, because they are not bound to know by necessity, all the terms of the contract made by their principal in any event, and they therefore know of the prohibition.   But the owner has no opportunity of protecting himself, because he cannot know to what persons the contract, or portions of it, may be sublet.   *  *  *

" It would be passing strange for us to hold that the right of a subcontractor for part of a building is of so sacred a character that it shall not be bound by the express limitations of a written contract under which, and by force of which, his own contract must be performed.   His right of lien has no existence at common law or in equity.   It is a creature of statute alone ; but the statute confers on him no special prerogative to transcend the most familiar principles of the law, and to claim privileges which are denied to all other citizens in the determination of their contract rights."

In this case of *Schroeder* v. *Galland*, the question was whether a waiver of lien and a guarantee against all liens by the principal contractor in his contract with the owner

of the property, bound the subcontractors ; and the court held that the latter were bound, and were not entitled to claim a lien. How much more should they be bound by the terms of payment in that contract, terms of universal usage, and without which building operations would be rendered difficult and hazardous to all but the extremely wealthy, terms made in great measure for the benefit of the subcontractors and to enable the contractor to pay them as their work progressed ?

In accordance with this doctrine was the decision of the Supreme Court of the District of Columbia, in the case of *Whelan* v. *Young,* 21 D. C. 51, and also the decision in the case of *Monroe* v. *Hannan,* 18 D. C. 197 ; and we desire to give our unqualified approval to the conclusions reached in both of those cases. Conformable to the principle of those decisions have been the usage and custom, and the common understanding of our community, both before and since their promulgation ; and a different doctrine would tend to revolutionize our industrial system, and to cause great hardship, inconvenience and annoyance, without corresponding benefit. In fact, the establishment of the theory advanced on behalf of the appellant would have the effect to check industrial enterprise, to fetter unduly and perhaps unconstitutionally, the freedom of contract and the free use of property, and ultimately to defeat the very purpose for which the law was enacted. We cannot think that this was the intention of Congress in the enactment of the Mechanics' Lien law ; and the statute therefore should not receive a construction, strained and unnecessary, which would make it unreasonable, oppressive and intolerable.

The question has also been raised on behalf of the appellant, Johnson, whether the fund in court should not be distributed ratably, and not in accordance with the priorities assumed to attach to the respective claims of the lien holders from the dates of the filing of their notices in the clerk's office. But as Johnson, in view of what we have said, has no legal right to raise this question, and no one of those

who might be entitled to raise it has appealed, it would seem to be neither necessary nor proper to discuss the question here.

For the reasons stated, we are of opinion that the decree of the court below was entirely right, and that *it should be affirmed with costs. And it is so ordered.*