**Saul RITZENBERG et al., Appellants,**

v.

**NOLAND COMPANY, Inc., Appellee.**

**No. 19858.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 21, 1966.

Decided May 27, 1966.

Messrs. Leonard S. Melrod and Mr. Joseph V. Gartlan, Jr., Washington, D. C., for appellants.

Mr. Edgar T. Bellinger, Washington, D. C., with whom Mr. Alexander M. Heron, Washington, D. C., was on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN and LEVENTHAL, Circuit Judges.

McGOWAN, Circuit Judge.

This appeal turns upon the proper construction of certain provisions of the District of Columbia laws relating to mechanic's liens. There is no real dispute about the facts, but only about how the statutes are to be read in relation to them. The District Court granted the lienor's motion for summary judgment enforcing the lien. We affirm.

I

Appellants are members of a partnership which was formed for the purpose of building an apartment house. The plumbing, heating and electrical work was to be performed by a contractor under an agreement fixing $99,125 as the total price. Appellee furnished materials and supplies to the contractor for use in the project. By April 12, 1963, the contractor owed appellee $6,919.36 (later adjusted to $6,289.50) on account of such materials and supplies; and on that day appellee filed its notice of lien on the building under construction. Despite

such notice, appellants thereafter paid the contractor, during the period from April 25 to May 31, a total of $10,015.96 under the contract. The contractor ultimately defaulted, and appellants paid out substantial sums to complete the work. It is agreed that, without including or taking account of the $10,015.96 paid to the contractor after notice of appellee's lien, the total sum of $98,596.54 was expended by appellants in respect of the work called for by the contract. So computed, $528.46 could be regarded as remaining due from appellants under the contract.

It is only this last sum, say appellants, which may, under the governing statute, be made the measure of all lien enforcement. Contrarily, appellee urges that Congress has clearly given it a right to enforce its lien up to the amount of $10,015.96, representing the sums paid to the contractor by appellants after notice of appellee's lien. The District Court agreed with this latter view, and entered judgment of enforcement of the lien in the amount of appellee's claim for $6,289.50.[1]

## II

The provisions which Congress has made for mechanic's liens are set forth in 38 D.C.Code §§ 101–126 (1961 ed.). The parties look to different sections of the statute as controlling. Appellants take their comfort from Section 104 which embodies in terms the principle that all liens are subject to the contract between the owner and the contractor, including the total price due under that contract; and are to be satisfied only out of that amount.[2] Appellee, on the other hand, rests upon Section 106 which, it contends, affirmatively requires the owner, once on notice of a properly filed lien, to withhold from further payments to the contractor a sum sufficient to satisfy the lien indebtedness, upon pain of seeing the property made answerable at all events, to the extent of such further payments, for the satisfaction of the lien.[3]

It is certainly true that the purpose and effect of Section 104 are not to expose the owner to liability to the lienors greater than that owed by him to the contractor. See Herrell v. Donovan, 7 App.D.C. 322 (1895); Harper v.

---

1. Two other suppliers—defendants in the District Court but not parties to this appeal—filed notices of liens after appellants had made the payments to the contractor totalling $10,015.96, referred to hereinabove. They cross-claimed against appellants for enforcement of their liens. Appellants urge that summary judgment should not have been granted because these liens have not been finally determined, and that they must be in order to admit of a proper *pro rata* sharing by all lienors in the amount remaining due under the contract. But appellee's claim of right under Section 106 to the enforcement of its lien rests upon payments to the contractor which were improper only in relation to it, being the only supplier who, as of the time such payments were made, had filed a lien. Under the disposition of appellee's claim which the District Court made, and we approve, appellee had no relationship to a *pro rata* sharing, if any, with later lienors.

2. "All such liens in favor of parties so employed by the contractor shall be subject to the terms and conditions of the original contract except such as shall relate to the waiver of liens and shall be limited to the amount to become due to the original contractor and be satisfied, in whole or in part, out of said amount only; and if said original contractor, by reason of any breach of the contract on his part, shall be entitled to recover less than the amount agreed upon in his contract, the liens of said parties so employed by him shall be enforceable only for said reduced amount, and if said original contractor shall be entitled to recover nothing said liens shall not be enforceable at all."

3. "After notice shall be filed by said party employed under the original contractor and a copy thereof served upon the owner or his agents as aforesaid, the owner shall be bound to retain out of any subsequent payments becoming due to the contractor a sufficient amount to satisfy any indebtedness due from said contractor to the said subcontractor, or other person so employed by him, secured by lien as aforesaid, otherwise the said party shall be entitled to enforce his lien to the extent of the amount so accruing to the principal contractor."

Galliher & Huguely, Inc., 29 F.2d 452, 58 U.S.App.D.C. 252, cert. denied, 278 U.S. 657, 49 S.Ct. 185, 73 L.Ed. 565 (1928). And there will be no such exposure unless the owner ignores the explicit commands of Section 106, which is addressed to the making of payments to the contractor by the owner after the latter has been notified that an unpaid supplier claims a lien. The statute says in terms that the owner is to withhold enough from these payments to take care of the claim. The owner's failure to do this makes the lien enforceable to the extent of such payments, whatever may be the degree to which the owner has discharged the obligations running from him to the contractor under the contract. The legislative policy served is to prevent a situation where, as here, appellants own a building containing roughly $6,000 worth of materials and supplies furnished by appellee for which, despite its forehandedness in giving notice to appellants, it has never been paid.

It is not enough for appellants to counter that they in effect have already paid for them once and should not be called upon to do so a second time. The trouble with this is that they made their first payment to the contractor, who did not use it in turn to satisfy his materialmen. And this payment was made at a time when appellants were on notice of appellee's claim. Section 106 seems to us to say quite clearly that the owner does this at his peril. If he chooses to rely on the contractor in this situation to see to it that the money is used to pay the lienor, and the contractor disappoints him in this expectation, then a second payment for the same materials may be the consequence.[4] But the bricks are in his building, and the whole theory of mechanic's liens points in the direction of concluding that the equities here reside with the supplier rather than the owner. In any event, we believe that this is how Section 106 was intended to operate in the circumstances before us.[5]

The judgment is

Affirmed.

---

4. This rationale has been articulated by the Maryland Court of Appeals in Bounds v. Nuttle, 181 Md. 400, 30 A.2d 263, 266 (1943), in these terms:

"If their [the owners] failure to protect themselves against an impecunious contractor causes them to have to pay twice for materials, it is their own fault. The mechanic's lien law was passed to cover just such a situation and to protect materialmen. The theory of it is that the owner gets the benefit of the materials, and he has control of the money. If he negligently and carelessly pays the money out to the contractor without taking precautions to see that it is applied to the payment of the materials which go in the building, then he must stand the loss rather than the materialman, who has no opportunity to protect himself once he has delivered the materials."

5. The precise point of statutory construction involved here does not seem to have arisen heretofore in this jurisdiction. For cases elsewhere which appear to comport with the resolution we make of it, see Stone v. Moomjian, 92 Conn. 476, 103 A. 635 (1918), and Beeson Hardware Company v. Burtner, 199 N.C. 743, 155 S.E. 733 (1930). As is true in matters of statutory construction generally, the language used varies from one jurisdiction to the next, and the strict precedential value of cases from other jurisdictions is necessarily limited.