## Fahringer Corp. v. Newman

Gary A. Korn, of Rosenn, Jenkins & Greenwald, and Eugene E. Fike, of Fike, Cascio & Boose, for plaintiff.

Frederick B. Gieg, Jr., of Gieg and Gieg, for mortgage assignee.

James A. Kudasik, for defendants.

SHAULIS, J., July 13, 1976—This matter is before the court on the petition of Ezra E. Newman and Justine L. Newman, his wife, for leave to pay into court the sum of $3566.44, the amount they claim to be due on a home improvement contract and to have the court discharge the mechanics' lien and the mortgage entered against their real estate.

In this case, Fahringer Corporation has filed a mechanics' lien against a property owned by defendants, Ezra E. Newman and Justine L. Newman. The property is located at 748 First Avenue, Central City, Pa. Fahringer Corporation filed the

116

lien as a subcontractor of Flamingo Pools, Inc., also known as Flamingo, Inc., pursuant to the Mechanics' Lien Law of August 24, 1963, P.L. 1175 (No. 497), 49 P.S. §1101, et seq.

On July 31, 1975, a contract was entered into between the Newmans and Flamingo for the construction of a garage on the Newman property at 748 First Avenue, Central City. The Newmans and Flamingo also signed a home improvement contract, note and mortgage to finance the garage. The mortgage was recorded in Mortgage Book Volume 234, page 159, on September 17, 1975.

On August 25, 1975 Fahringer entered into an oral agreement with Flamingo to erect a garage on the property of the Newmans. Pursuant to this agreement, Fahringer erected a prefabricated garage upon the premises on August 25 through August 27.

Flamingo assigned the mortgage to the Gramatan Home Investors Corp. on September 6, 1975. The assignment was recorded on September 17, 1975 in Deed Book Volume 780, page 251. On September 9, 1975, Gramatan tendered a check to Flamingo in the amount of $3750. The check was negotiated by Flamingo on September 11, 1975. On September 9, 1975, Gramatan assigned the mortgage to Chemical Bank.

Fahringer, the subcontractor, was never paid by Flamingo or the Newmans. Flamingo has subsequently gone bankrupt. On November 8, 1975 Fahringer filed notice of intention to file a mechanic's lien; on December 22, 1975, it filed notice of filing a mechanic's lien and a mechanic's lien was filed on January 27, 1975.

The property of the Newmans is now subject to two encumbrances, the mechanic's lien filed by

Fahringer and the mortgage now held by Chemical Bank. The mechanic's lien is in the amount of $2064.20 and the unpaid balance of the mortgage is $3566.44 for a total of $5630.64. The Newmans acknowledge a debt of $3566.44 to someone. They seek to pay $3566.44 into court and have both encumbrances, the lien and the mortgage, discharged.

A subcontractor, such as Fahringer in this case, has the right under the Mechanics' Lien Law of 1963 to file a lien against the improved property. Section 301 of the mechanics' lien law provides:

"Every improvement and the estate or title of the owner in the property shall be subject to a lien, to be perfected as herein provided, for the payment of all debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement, provided that the amount of the claim, other than amounts determined by apportionment under section 306(b) of this act, shall exceed five hundred dollars ($500)." August 24, 1963, P.L. 1175 (No. 497), art. III, sec. 301, 49 P.S. §1301. Fahringer has also followed the procedures set forth in section 501 of the Mechanics' Lien Law, 49 P.S. §1501, regarding notice by a subcontractor.

Article VI of the Mechanics' Lien Law sets forth the duties and remedies of the owner and contractor on notice of intention to file or on filing of a claim by subcontractor. The applicable section of Article VI to this case is section 604, 49 P.S. 1604, because the contractor, Flamingo, has failed to settle, discharge or defend or secure against the claim. Section 604 provides:

"Should the contractor fail to settle, discharge or

defend or secure against the claim, as provided by this act, the owner may:

"(1) pay the claim of the subcontractor, upon which payment the owner shall be subrogated to the rights of the subcontractor against the contractor together with any instrument or other collateral security held by the subcontractor for the payment thereof; or

"(2) undertake a defense against said claim in which case the contractor shall be liable to the owner for all costs, expenses and charges incurred in such defense, including reasonable attorneys' fees, whether said defense be successful or not, but the undertaking of such defense shall not affect the right of the owner to retain funds of the contractor under section 601 until the subcontractor's claim is finally defeated or discharged." Act of August 24, 1963, P.L. 1175 (No. 497), art. VI, sec. 604, 49 P.S. §1604.

The mechanics' lien law in Pennsylvania gives subcontractors a direct claim against the improved property. This claim is independent of any claims by the contractor. Under statutes conforming to the Pennsylvania system of direct liens, the right of a subcontractor, materialman, or workman to a lien is not dependent upon the state of accounts between the owner and contractor and the lien is not defeated or affected by any payment to the contractor. 57 C.J.S. Mechanics' Lien §251.

Although we are unable to find a dispositive Pennsylvania case, cases in states which provide a subcontractor with a direct lien upon the property seem applicable. In Bounds v. Nuttle, 181 Md. 400, 30 A.2d 263 (1943), the Maryland Court of Appeals held that the subcontractors had valid liens even though the owners had paid the prime contractor

and the prime contractor had paid the subcontractor but had failed to specify the job to which the payments were to have been applied. The court said:

"The theory of [the mechanics' lien law] is that the owner gets the benefit of the material, and he has control of the money. If he negligently or carelessly pays the money out to the contractor without taking precautions to see that it is applied to the payment of the materials which go in the building, then he must stand the loss rather than the material man, who has no opportunity to protect himself once he has delivered the materials."

In Ritzenberg v. Noland Company, 364 F.2d 667 (1966) the United States Court of Appeals for the District of Columbia Circuit held that the lien of a subcontractor is not defeated by payment to the contractor. The court said:

"It is not enough for appellants [owners] to counter that they in effect have already paid for them [materials] once and should not be called upon to do so a second time. The trouble with this is that they made their first payment to the contractor, who did not use it in turn to satisfy his materialmen . . . If he [owner] chooses to rely on the contractor in this situation to see to it that the money is used to pay the lienor, and the contractor disappoints him in this expectation, then a second payment for the same materials may be the consequence. But the bricks are in his building, and the whole theory of mechanic's liens points in the direction of concluding that the equities here reside with the supplier rather than the owner."

The Supreme Court of Oklahoma has held that the owner's payment to the contractor is at owner's risk in the event the contractor does not pay the materialmen: Cashway Lumber Co. v. Langston,

479 P.2d 582 (1970). See also Herrman v. Daffin, 302 S.W.2d 313 (1957), Missouri Court of Appeals; Bennett v. Pearson, 139 Ind. App. 224, 218 N.E.2d 168 (1966), Appellate Court of Indiana.

The Mechanics' Lien Law of 1963 gives subcontractors the right to file a lien. Fahringer has complied with all the statutory prerequisites and is clearly entitled to its lien against the property of the Newmans. The fact that Flamingo received payment upon assignment of the mortgage and failed to pay Fahringer does not defeat Fahringer's claim against the property.

The mortgage entered into between the Newmans and Flamingo is now held by Chemical Bank through assignment. Flamingo assigned the mortgage to Gramatan on September 6, 1975 whereupon Gramatan tendered a check in the amount of $3750 to Flamingo. This assignment is recorded in Somerset County Deed Book Volume 780, page 251. Gramatan then assigned the mortgage to Chemical Bank.

The Newmans later received a letter and payment book from Chemical Bank. Five payments in the amount of $86.80 each were made by the Newmans. The unpaid balance of the mortgage is $3566.44. This is the amount the Newmans have paid into court in an effort to discharge both the mortgage and the lien.

Chemical Bank appears to be a holder in due course. 12A P.S. §3-302 defines a holder in due course as follows:

"(1) A holder in due course is a holder who takes the instrument

"(a) for value; and

"(b) in good faith; and

"(c) without notice that it is overdue or has been

dishonored or of any defense against or claim to it on the part of any person.

"(2)  A payee may be a holder in due course.

"(3)  A holder does not become a holder in due court of an instrument:

"(a)  by purchase of it at judicial sale or by taking it under legal process; or

"(b)  by acquiring it in taking over an estate; or

"(c)  by purchasing it as part of a bulk transaction not in regular course of business of the transferor.

"(4)  A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased." April 6, 1953, P.L. 3, sec. 3-302, eff. July 1, 1954. Reenacted October 2, 1959, P.L. 1023, sec. 3, eff. January 1, 1960.

As a holder in due course, Chemical Bank has the following statutory rights:

"To the extent that a holder is a holder in due course he takes the instrument free from

"(1)  all claims to it on the part of any person; and

"(2)  all defenses of any party to the instrument with whom the holder has not dealt except

"(a)  infancy, to the extent that it is a defense to a simple contract; and

"(b)  such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

"(c)  such misrepresentation as had induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

"(d)  discharge in insolvency proceedings; and

"(e)  any other discharge of which the holder has notice when he takes the instrument." 12A P.S. §3-305.

It would appear the Chemical Bank holds the

mortgage free from any claim by Fahringer or the Newmans.

Chemical Bank, as a holder in due course, is entitled to continue to receive payments under the mortgage. In First National Bank of Phila.v. Anderson, 7 D. & C. 2d 661 (1956), the court held that the failure of the payee to carry out its contract does not affect one who is a holder in due course. In Newark Trust Co. v. Birchler, 54 Lanc. 265 (1955), the court held that payment to the payee of a negotiable note prior to the latter's transfer before maturity to a holder in due course having no knowledge of such payments will not protect the maker from having to make such payments a second time to the holder. If the rights of a holder in due course are protected in cases such as those cited it would follow that the rights of a holder in due course would be protected in a case such as the present one, and that Chemical Bank is entitled to receive the unpaid balance of the mortgage

The Newmans seek discharge of two encumbrances totaling $5630.64 by payment of $3566.44 into court. However, both encumbrances appear to be valid. Both encumbrances cannot be discharged by paying $3566.44. This is a difficult case because it appears that the Newmans may be obligated to pay twice. This is unfortunate because they have acted in good faith. Of all the parties involved, Flamingo appears to be most culpable; however, they are reportedly bankrupt and unable to make good the claim of Fahringer. It is unfortunate for the Newmans that they did not take the necessary steps to protect themselves from such a situation by requiring the contractor to sign and file in the Prothonotary's office a "No Lien Agreement."

Since both liens are valid this Court has no power to direct the discharge of either lien without payment in full.

## ORDER

Now, July 13, 1976, defendants' petition is dismissed at the costs of defendants.