## MINNIE F. RODGERS AND JOHN B. RODGERS

*vs.*

## ALBERT JOHN.

---

## HARRY M. BENZINGER, Trustee, and MARY A. and HELEN A. RODGERS

*vs.*

## SAME.

*Equitable estoppel: intent of parties; fraud or inequitable conduct; mere forgetfulness not sufficient.*

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have existed —as against another—who has in good faith relied upon such conduct, and who has been led thereby to change his position for the worse, and who on his part acquires some corresponding right,—in property, contract or remedy.                    p. 462

Whatever may be the real intention of the party making the representation, it is absolutely essential that the representation, whether consisting of words, acts or silence, shall be believed and relied upon as the inducement for action by the party claiming benefit of the estoppel and that so relying, and being so induced by it, took action.                    p. 462

Whether or not the doctrine applies depends upon the particular facts of each case.                    p. 462

But unless the party against whom the doctrine is invoked has been guilty of some unconscientious, inequitable, or fraudulent, act of commission or omission, upon which another has relied, and been misled, to his injury—the doctrine will not be applied.                    p. 462

A lessee had the lease sent to the lessor's attorney for approval and execution; the lease had been drawn as though the lessor were the owner of the property, while in fact he had but a life estate in it, as many years before he had executed a deed of trust of the property to his attorney as trustee, reserving only a life estate, in himself, as owner; upon the death of the lessor, his lessee claimed that the trustee was estopped from setting up title on behalf of the reversioners under the deed of trust on the ground that the trustee had allowed the deed to be signed as though the lessor owned the property in fee. *Held,* that equitable estoppel could not be invoked against the trustee as there was no evidence that any representation had misled the lessee, and as it appeared that the trustee's silence in regard to the title came not from any fraudulent intent, but at most only from forgetfulness that the legal title had ever been conveyed to himself.       p. 463

The recording of a deed in the Land Records of the City or County where the land lies is constructive notice of its contents.       p. 463

*Decided November 21st, 1917.*

Four appeals in one record from the Circuit Court of Baltimore City. (STUMP, J.)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

The facts are stated in the opinion of the Court.

*Henry H. Dinneen* (with whom were *Harry M. Benzinger* and *W. Stuart Symington, Jr.,* on the brief), for the appellants.

*Donald B. Creecy* and *Eugene O'Dunne* submitted the cause on brief for the appellee.

Burke, J., delivered the opinion of the Court.

There are four appeals in this record, but as the questions presented are precisely the same in each case, they will be disposed of in one opinion to be filed in No. 44—that being the appeal of *Minnie F. Rodgers and John B. Rodgers* v. *Albert John.* The appeal was taken by all the appellants from the following decree passed by the lower Court:

"This cause having come on for hearing in open court, evidence having been produced and counsel heard in argument, and being submitted for decree, it is this 17th day of April, 1917, by the Circuit Court of Baltimore City, adjudged, decreed and declared that the whole, right, title and interest of the defendants in this cause in and to the premises known as 409 North Calvert street, Baltimore, Maryland, and described in the evidence, is subject to an unexpired term of years in the complainant, Albert John, expiring on the 4th day of January, 1921; and that the said complainant, Albert John, holds and possesses said unexpired term in said premises by good and valid title subject only to the payment of a rental of two hundred dollars a month to the defendant, Harry M. Benzinger, trustee, and to the other terms and conditions expressed to be performed by the said complainant, Albert John, in the lease made between him and Patrick Rodgers, since deceased, dated January 4th, 1906, and admitted in evidence in this case. Defendants to pay costs."

The record shows that in May, 1894, Patrick Rodgers, now deceased, was the owner of the property known as No 409 North Calvert street, in the City of Baltimore, and that in contemplation of a marriage between himself and Mary F. Gill, whom he did afterwards marry—she being Minnie F. Rodgers, one of the parties to this cause and one of the appellants in No. 44—he and Mary F. Gill executed and delivered to Harry M. Benzinger a deed of trust by which the property No. 409 N. Calvert street, together with certain other property, not, however, involved in these proceedings, was granted and conveyed to Mr. Benzinger in trust for the uses

and purposes expressed in the deed. The deed was executed on the 22nd of May, 1894, and was on the same day recorded among the Land Records of Baltimore City. By the provisions of the deed an equitable life estate was reserved to Patrick Rodgers in the Calvert street property, and upon his death the trustee was required to pay over to Mary F. Gill during her life out of the clear rents, issues and incomes of said property the sum of seventy-five dollars per month, "and the balance of said rents, issues, income and profits, to pay over to such person or persons as the said Patrick Rodgers may designate to receive the same by his last will and testament or in default of last will and testament, to pay the same to the right heirs of said Patrick Rodgers (not including said Mary F. Gill), and from and immediately after the death of said Mary F. Gill, if she survives him, in trust, as to said estate and property to grant and convey the same unto such person or persons as the said Patrick Rodgers may designate to receive the same by his last will and testament or in default of last will and testament—to grant and convey the same to the right heirs of said Patrick Rodgers then living absolutely. In trust if the said Mary F. Gill die before the date of the death of said Patrick Rodgers to convey said property to said Patrick Rodgers, absolutely."

Patrick Rodgers had been previously married, and left surviving him one son by that marriage, John B. Rodgers, one of the appellants, and ten children were born to him after his marriage to Miss Gill. At the time the bill in this case was filed eight of the children were minors. Patrick Rodgers died in April, 1907, intestate, and the equitable remainder in the property is now vested in these eight children, subject to the rights of their mother under the deed; and if living at the time of her death it will be the duty of the trustee to grant and convey the property to them.

Mr. Rodgers remained in possession of the property for more than twelve years after the execution of the deed of

trust and conducted thereon a wine and liquor business. He sold this business to Albert John, the appellee, who paid him five thousand dollars for the good-will of the business and $3,734.09 for the stock in trade. Rodgers agreed to give John a lease of the premises. The contract of sale and lease, both dated January 4, 1906, appear in the record. When the negotiations for the sale and lease began does not appear, but it does appear that the parties had reached an agreement before the formal papers were signed. The only part of the contract of sale with which we are concerned in this case is the following recital:

> "Whereas, said Rodgers is the owner of the property known as No. 409 North Calvert street, in which he conducts a wine and liquor store, and the good will of which said wine and liquor business he has agreed to sell to said John, and the said John has agreed to buy."

The two provisions of the lease which are material in this case are, first, the one by which the property was leased "for the term of five (5) years, beginning on the 5th day of January, 1906, and ending on the 4th day of January, 1911, to be used by the said lessee as a wine, saloon and liquor place, and for no other purpose. The said lessee yielding and paying the said lessor therefor the yearly rent of twenty-four hundred dollars ($2,400), payable in equal monthly installments of two hundred dollars ($200), the first of which will fall due on the 5th day of February, 1906, and to be paid at the Merchants' National Bank of Baltimore"; and, secondly, wherein it was agreed "that this lease, with all its provisions and covenants, shall continue in force after the expiration of the term above mentioned, for one other term of ten years at the option of the lessee upon his giving sixty days' notice in writing to the said lessor."

About thirteen months after the execution of this contract and lease Mr. Rodgers died, and his estate under the deed terminated. Mrs. Rodgers and John B. Rodgers were ap-

pointed administrators of the estate of Patrick Rodgers; and Mrs. Rodgers was appointed guardian of the infant children, and was authorized by an order of the Orphans' Court to spend the income of the estate for the support, maintenance and education of the children. Being entitled in her individual right, and as guardian of the minor children, to the whole income from the property, Mr. Benzinger, as trustee, permitted her to receive it. He testified that his reason "for allowing Mrs. Rodgers to collect the rent was if I had collected it I would have had to charge her a commission, and I felt that she needed every cent that she could get, and, therefore, I did not want to put her to any expense."

After the death of Mr. Rodgers, Mr. John continued in the occupancy of the premises, and paid the monthly rent to Mrs. Rodgers, or for her account, and he testified that the net profits from the business has been approximately six thousand dollars a year.

In 1913 the Pennsylvania Railroad began the purchase of property on North Calvert street, near that involved here, for the use in connection with certain improvements which it proposed to make. Negotiations began between Mr. Benzinger and Mrs. Rodgers with a representative of the company for the sale of this property. Mr. John claimed that the lease between himself and Rodgers, executed January 4, 1906, for a term of five years, had been extended for a term of ten years, as provided by the above-quoted provision of the lease, and that that term did not expire until January 4, 1921. This was denied by the trustee and Mrs. Rodgers, who asserted that John had no lease upon the property. Thereupon the bill in this case was filed. The defendants answered and, after testimony had been taken in open court, the decree appealed from, which is transcribed above, was passed.

It is not contended that Patrick Rodgers had the power to lease the property for a term extending beyond the period of his natural life, and, ordinarily, upon his death in April, 1907, the rights under the lease would have ended, but it is

argued that although Mr. Benzinger, trustee, did not sign either the contract or the lease, he is bound by their provisions under the doctrine of equitable estoppel, and that upon this ground is precluded from asserting any right to the property in prejudice of what the appellee claims to be his unexpired term of the ten-year extended lease.

The ground upon which this contention rests is set out in the bill, particularly in the fifth paragraph, which is as follows:

> "That said contract of sale and said lease were drawn by the defendant, Harry M. Benzinger, and executed in his office and in his presence; that the said contract, as drawn by the defendant, Harry M. Benzinger, stated that the said Patrick Rodgers was the owner of said premises on the date of said contract; and your orator knew nothing of said trust deed of date the 22nd day of May, 1894, and that your orator paid as aforesaid the said sum of five thousand dollars relying on said statement and believing that, by reason of said ownership so stated the said Patrick Rodgers could grant and had granted to him a valid and indefeasible lease of said premises for five years, with a ten-year extension, as recited in said lease. That the said defendant, Harry M. Benzinger, having actively participated in and encouraged the execution of said lease as aforesaid, continued to sanction said lease, and for a period of more than seven years thereafter (said lease running more than six years after the death of said Patrick Rodgers hereinafter alleged) allowed your orator to remain in ignorance of said Benzinger's interest in said property, and to pay rent and otherwise deal under said lease continuously in reliance upon said statement that said premises were owned by said Patrick Rodgers, and consequently in the belief that, after said Rodgers' death, the same were owned by his heirs."

Equitable estoppel, which has its foundation in justice and good conscience, as defined by *Mr. Pomeroy* in his work on

*Equity Jurisprudence,* volume 2, section 804, "is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of· contract or of remedy"; and in Section 812 of the same work the author says: "Whatever may be the real intention of the party making the representation, it is absolutely essential that this representation, whether consisting of words, acts, or silence, should be believed and relied upon as the inducement for action by the party who claims the benefit of the estoppel, and that so relying upon it, and induced by it, he should take some action. The cases all agree that there can be no estoppel, unless the party who alleges it relied upon the representation, was induced to act by it, and thus relying and induced, did take some action." This definition of equitable estoppel and of one of its essential elements is in accord with the law of this State as announced in many cases, among which are *McClellan* v. *Kennedy,* 8 Md. 230; *Funk* v. *Newcomer,* 10 Md. 301; *Alexander* v. *Walter,* 8 Gill, 254; *Hardy* v. *Bank,* 51 Md. 590; *Carmine* v. *Bowen,* 104 Md. 198. Whether the doctrine should or should not be applied depends upon the facts and circumstances of each particular case, and unless the party against whom the doctrine has been invoked has been guilty of some unconscientious, inequitable or fraudulent act of commission or omission upon which another has relied and been misled to his injury, the doctrine will not be applied.

We will now consider the facts and circumstances attending the execution of the contract of sale and lease, out of which it is alleged in the fifth paragraph of the bill, the estoppel arose. It must, however, be first stated that counsel for the appellee disclaimed any intention to impute to Mr.

Benzinger any bad faith, fraud or intentional impropriety, and there is not a shadow of evidence to support such charges had they been made. The most that is claimed against Mr. Benzinger is "that the existence of the so-called trust deed had long since passed out of his recollection, more particularly so, because the terms of it, as appears from the record, have never been carried out between himself and Mr. Rodgers, and both Patrick Rodgers, in his lifetime, and his wife after his death, had handled the property to all intents and purposes as if they had the title of record in addition to the equitable interest therein." The estoppel is alleged to rest principally upon the statement in the contract of sale, which it is said Mr. Benzinger prepared, that Rodgers was the owner of the property, taken in connection with the conduct of Mr. Benzinger at the time the contract and lease were executed. It is not shown that Mr. Benzinger made any statement as to the ownership of the property, or that any statement as to title was made by anyone else apart from the recital in the contract. Nor does the evidence satisfy us that Mr. Benzinger drew either the contract or the lease. The weight of the evidence is to the effect that both the contract and lease were drawn by Mr. Percy C. Hennighausen, the counsel for Mr. John, and that the statement that Rodgers was the *owner* was the statement of Mr. John's attorney, and not that of Mr. Benzinger. Mr. John testified that he had employed Mr. Hennighausen to represent him in the matter, and had asked him to examine the title, and he further testified that Mr. Hennighausen drew the contract of sale. Mr. Hennighausen said he drew the agreement and the lease, but that he did not examine the title as he was not employed to do so. The deed of trust had been promptly recorded, and an examination of the land records would have disclosed the fact that the legal title was in Mr. Benzinger as trustee. Mr. John was chargeable with constructive notice of that fact, but at no time, until the controversy in this case arose, did he make or, if Mr. Hennighausen's testimony be true,

that he was not employed to examine the title, cause to be made any examination to ascertain the state of the title, or who was entitled upon the death of Mr. Rodgers to receive the rents, or in whom the property vested. He simply held over upon the death of Mr. Rodgers, but made no inquiry as to the ownership of the property.

The contract of sale and the lease were signed in Mr. Benzinger's office. He represented Mr. Rodgers and Mr. Hennighausen was counsel for Mr. John, and was present when the papers were signed. Mr. Benzinger said that his recollection was that the papers were prepared by Mr. Hennighausen, or in his office, and were sent over to him for approval, and that he did approve them and made an interlineation in the contract of sale. The proof fails to show that Mr. Benzinger made any written or verbal declaration which could or did mislead Mr. John. As the transaction took place about twelve years after the execution of the deed of trust, the most that could be claimed is, as stated in the appellee's brief, that the deed had passed out of Mr. Benzinger's recollection. But regardless of this, there is not a particle of evidence from any source that Mr. John relied on or was induced to sign the contract by the statement contained in the contract of sale that Rodgers was the *owner* of the property, a statement which he or his counsel could have readily found to have been untrue. In *Smith* v. *Cleaver,* 126 N. W. 589, which follows and adopts *Sutton* v. *Consolidated Apex Manufacturing Company,* 15 S. D. 410, *s. c.* 89 N. W. 1020, it was held it was not sufficient to show that the language, act or conduct of one might have misled a party to his prejudice, but it must affirmatively appear that such party was in fact misled or induced by such acts, conduct or language to do something which he would not have otherwise done.

We have already referred to the fact that Mr. John continued to occupy the property after the death of Mr. Rodgers without making inquiry and without knowing who owned it. He did not record the lease until March 15, 1913,—nearly

six years after Mr. Rodgers' death, and there is no evidence
that Mrs. Rodgers ever saw the lease, or was aware of its
terms, or had any knowledge of it. She had no authority to
lease the property, or to affect the title of the trustee, or the
owners of the equitable remainder, and the fact that Mr. Ben-
zinger, as trustee, permitted her to receive the rents, or that
she induced Mr. John to make advance payment of rent,
under the circumstances disclosed by the record, can not be
held, upon the authorities, to constitute an estoppel upon any
of the appellants.

It was said by Chief Judge Boyd *in Smith* v. *Humphries,*
104 Md. 285, that: "It is getting to be too common to have
parties ask the Courts to do what they could have done them-
selves, if they had exercised ordinary prudence; or, to state
it in another way, to ask Courts to undo what they have done
by reason of their own negligence."

As the evidence is lacking in the essential elements of equi-
table estoppel, the decree, which was based solely upon that
ground, must be reversed and the bill dismissed.

> *Decree reversed and bill dismissed, the appel-*
> *lee to pay the costs.*