WALTON C. BOUNDS, ET AL. *v.* ELIAS W. NUTTLE, ET AL.

[No. 3, January Term, 1943.]

*Decided February 11, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*V. Calvin Trice* for the appellants.

*James A. McAllister* and *Wesley E. Thawley* for the appellees.

MARBURY, J., delivered the opinion of the Court.

This bill of complaint was filed by the appellees to enforce a mechanic's lien for materials furnished by them in the construction of a house, of which the appellants are the owners. Not only the appellees, but the contractors, were made defendants. The contractors had also filed a mechanic's lien against the same property for an amount in excess of the lien filed by the appellees, but including the materials mentioned in appellees' lien. The contractors answered, were represented by counsel for the hearing, and one of them testified for the appellees. They did not, however, attempt to prove their lien, although it was filed as an exhibit with the bill of complaint. The contractors asked, if the relief prayed by the complainants were granted, that the proceeds of sale of the property should be devoted to the payment of their claim as well as that of the complainants. The court below decreed the sale of the property of appellants, unless they paid the appellees the amount of their lien, and directed the trustees appointed to bring into

court the money arising from such sale, to be distributed under the direction of the court. The court did not specifically pass upon the validity *vel non* of the contractors' lien. This appeal is taken only by the owners.

The first question that arises is the ruling of the court below overruling a demurrer to the bill of complaint. The record does not contain the demurrer, and the only suggestion that there was one is the heading of the paper filed by the appellants which is entitled "Demurrer and Answer." The paper itself, however, does not state that it is a demurrer, nor is it in accordance with Equity Rule 18 either as to form or substance. Nor does the record show that it was supported by an affidavit that it was not intended for delay. Under these circumstances, we cannot construe the answer to be a demurrer; we cannot find in the record any demurrer which we can consider; and we have nothing before us upon which we can determine what were the questions raised at the hearing, and upon which were based the ruling of the lower court. We cannot, therefore, review this ruling.

The second question involves the notice given by the appellees to the appellants. Such notice is required to be given under Code, 1939, Art. 63, Sec 11, where the contract for furnishing the work and materials is made with any other person except the owner of the property, and where the owner or agent is resident within the city or county. Section 12 of Article 63 provides that if such notice cannot be given on account of absence or other causes, the claimant or his agent may, in the presence of a competent witness, place a notice on the front door or other part of the building. These sections were construed in the case of *Kenly v. Sisters of Charity*, 63 Md. 306, and it was there said: "Before the claimant can rely upon the notice attached to the building he must show affirmatively that there was no owner or agent in Baltimore County, or that there were other causes why the notice could not be served personally." In the case before us, the owners of the property at the time of making

the contract and at the time of placing the notice on the building, were residents of Princess Ann in Somerset County. The building was in Dorchester County. One of the appellees talked to the appellant, Walton C. Bounds, on the telephone on April 7, 1941, when appellants were at East New Market, on their way to Princess Ann. In this conversation appellants were told appellees wanted to arrange a meeting, so they could serve a notice of this lien. The appellants were unable to wait. Thereupon, the appellees, through their agent, took the notice of the lien, and on the same day had it attached to the front door of the building in the presence of a witness. This was done within time and in accordance with the provisions of the statute, and the notice itself seems to be in proper form. Objection is made because the copy filed has the statement at the bottom by the appellees' agent that it was served upon the appellants and this statement is witnessed. That is a matter of nomenclature only. It might readily he held that the placing of the notice on the door was service under· the statute, although not personal service. The appellants within a few days went to the property and found the notice there. We conclude that the notice, under the circumstances, was properly given.

The main contention of the appellants is that the appellees, by reason of the circumstances under which the contractors were employed, and by reason of their subsequent dealings with the contractors, are estopped from claiming any lien on the building. It appears from the record that the appellants had purchased the property and were desirous of building a residence on it. They had heard of the appellees and went to see them for the purpose of discussing a contract to build. The testimony is conflicting and somewhat confusing as to just what were the conversations. The evidence of the appellees is that they did not build houses, but only furnished materials, that they so informed the appellants, but recommended· the contractors to them. This seems to

have been substantially what happened, judging by the results. The appellants looked at some houses that the recommended contractors had built, accepted the appellees' recommendation, met the contractors with an agent of the appellees on the premises, had some discussion with the agent as to the form of the contract to be entered into, and finally signed the contract with the contractors, on the premises, in the presence of the agent of the appellees. This contract was with the contractors alone. The appellees were not only not parties to it, but it provided that the contractors should furnish and pay for all the labor, materials, etc., necessary to construct, complete and deliver to the appellants, free from any claims or liens, a building shown by the plans and specifications. The contract price was $7,380, payment to be made in monthly installments, on or before the 10th day of each month, amounting to 90 per centum of the labor and materials furnished during the preceding month, and final payment to be made within thirty days after the contract was fully performed.

After this contract was signed, the appellants were obliged to pay the contractors for the materials furnished, unless they were on notice that the contractors were not taking care of bills for which liens might subsequently be laid. All the previous negotiations were merged in this contract. It appears that it was suggested to the agent of the appellees at the time of the signing that the appellees had not signed, and he replied that that was not necessary. The appellants then accepted a contract with the contractors which obligated them to pay the contractors and the contractors alone. There is nothing in the record which indicated that any improper means were used by the appellees to induce the appellants to enter into this contract. On the contrary, it appears that there was considerable discussion about the contractors, the work they had done on other buildings, and the kind of contract that was to be signed. The appellants were not satisfied with the original draft, and re-

quired another draft to be prepared on a form they produced. It may be unfortunate that they did not have the advice of competent counsel, but their ignorance of law is no excuse. If their failure to protect themselves against an impecunious contractor causes them to have to pay twice for materials, it is their own fault. The mechanic's lien law was passed to cover just such a situation and to protect material men. The theory of it is that the owner gets the benefit of the material, and he has control of the money. If he negligently and carelessly pays the money out to the contractor without taking precautions to see that it is applied to the payment of the materials which go in the building, then he must stand the loss rather than the material man, who has no opportunity to protect himself once he has delivered the materials.

There is another phase of the matter which presents a much more serious claim of estoppel, and if it were supported by facts, it would operate against the appellees. In the answer of the appellants, they state that they have positive knowledge that the contractors have paid to the appellees money which the appellants had paid the contractors, that the appellees have applied this money to debts owed them by the contractors on other jobs, and that the contractors and the appellees "have collusively arranged these claims of theirs against these defendants." In other words, the claim is made that the contractors were indebted to the appellees on bills for material other than that going into the appellants' building. That the money the appellants paid the contractors was paid over to the appellees and credited on these other obligations. That this was done collusively, so that the appellees could have their other bills paid, and could have a lien on the appellants' property for the materials for which the appellants had already paid the contractors. As we have said, if this were proved, it would indicate definitely a fraud upon the appellants and the appellees could be permitted to have no lien. The proof

offered, however, falls far short of that necessary to establish such a plan.

It appears from the testimony that the appellants did draw two checks to the appellees direct, one for $1,500 and one for $500, this having been done at the request of the contractors. Appellants then offered a number of other checks drawn to the order of the contractors, endorsed by the contractors, and then endorsed "For deposit only to the account of C. Leslie Hammond, Agent for Nuttle & Adkins." C. Leslie Hammond was one of the contractors. These checks were not admitted in evidence by the court below, and he also refused to permit the appellant, Walton C. Bounds, to testify whether he had any personal knowledge of the payment to the appellees of any of the money represented by these rejected checks, or to testify whether he had any knowledge that from the account of Nuttle & Adkins checks were given to the appellees, and that the appellees knew that the money passed by that check came from the appellants. If the contractors did use part of the money received by them from the appellants to pay bills which they owed to the appellees, this was entirely within their rights, and it was also entirely within the rights of the appellees to receive this money and credit it on old bills, provided there was no arrangement or agreement that this was done for the purpose of permitting the appellees to collect again by means of a lien from the appellants. There is no evidence of any such collusion, and no offer of proof indicating that the appellants have any basis for so alleging. On the contrary, when the other appellant, Mrs. Mae A. Bounds, was on the stand, she was permitted more latitude by the court, and was allowed to say whether she knew what the contractors did with their money that was paid them, and she said that they finished up one FHA house with part of it, and the house they built just prior to the FHA house, they paid Mr. Nuttle $400 on that bill, and paid another bill for $169 to Mr. Nuttle for materials on a tenant house. She was

then asked whether there was anything in those payments to show Mr. Nuttle where that money came from. She said that the account of the agent for Nuttle & Adkins contained only the appellees' money. She was then asked whether Mr. Nuttle knew where the money came from. She said, at first, that she had only to go on what Mr. Nuttle said at the end of the transaction, that Mr. Hammond was behind in all his bills and owed him $700. She later said that Mr. Hammond did not have any other job, and that she saw the stub on a check that was given to Mr. Nuttle apparently out of the Nuttle & Adkins account, but this line of investigation was not carried further. This testimony is, of course, too indefinite to support charges which amount to fraud. Mere suspicion is not proof.

Contractors building a number of houses frequently have separate accounts with material men. The contractor can apply his money on any bill he owes. It does not have to be applied on the bill for the materials for the house from the contract for which he obtained it. The contractor's obligation to the owner is to finish and turn over the house without liens, but this does not prevent him from using his receipts from one contract to pay on another. Nor does it prevent the material man from having his lien, unless he agrees that it shall be done this way, in order that he may get his other bills paid and may collect double from the owner. That, of course, would be a fraud.

There is no evidence in the case on behalf of the appellants to show the reason for the account of "C. Leslie Hammond, agent for Nuttle & Adkins." They do not offer any evidence of who Nuttle & Adkins are, or why these names are used. C. Leslie Hammond, who was one of the defendants, was not called by them, nor was his absence explained. The only evidence about this account is that of Elias Nuttle, one of the appellees, who said that his name was Nuttle and that there was another firm of Adkins, but there was no connection between the

two. That he did not know who Nuttle & Adkins were, he never had any checks from them, no money was ever paid by them to his company, that he is not the Nuttle and his firm is not in it. This evidence is entirely uncontradicted. Under these circumstances, we are unable to find that there is any proof in the case or any evidence offered and rejected which would indicate collusion between the contractors and the appellees and which would estop the latter from claiming their lien against the property.

The appellants also contend that the decree does not adjudicate all of the rights of the parties to the case, inasmuch as it does not mention the contractors' lien. It is not necessary under the mechanic's lien law to join all parties having liens in a bill to enforce a specific lien. If they are not joined, and a decree is passed for the sale of the property, they can file their claims with the auditor against the proceeds. This practice, we are advised, obtains in some jurisdictions in the State. On the other hand, the holders of other liens may be made parties, and in the trial of the case they may present their evidence as to their claims, and the court can then and there pass on them. An instance of that procedure in which some claims were sustained by this court and some rejected, is in the case of *Hensel v. Johnson,* 94 Md. 729, 51 A. 575. It seems to be obvious, however, that where a party is made a defendant and answers and sets up his lien and then participates in the trial of the case, he is bound in the course of that trial to present testimony in support of his lien. He cannot wait and file a subsequent bill for its enforcement, or file it with the auditor and have a later adjudication of it. His day in court is when the case is tried. *Albert v. Hamilton,* 76 Md. 304, 25 A. 341; *Riley v. First National Bank,* 81 Md. 14, 31 A. 585; *Rody v. Doyle,* 181 Md. 195, 29 A. 2d 290.. In the case before us, the contractors did not present any proof of their lien, and while the court below did not in terms dismiss it, it did not pro-

vide for its payment. Their rights must be considered to have been adjudicated adversely to them by the decree of the court below, which fails to allow their lien. No appeal was taken by the contractors here.

There remains the final question of the amount of land which was decreed by the court below to be sold to pay the lien of the appellees. It appears from the record that the entire tract owned by the appellants was 30.45 acres of land, which included mill rights, water rights, mill pond and land under the pond. The county surveyor surveyed the property and, according to the stipulation filed in the case, it was agreed by counsel that 1.75 acres, included within certain lines of his survey, was the proper amount of land to be sold for the ordinary and useful purposes of the new building. This land, however, is adjacent to the mill pond, which is over the property of the appellants. The appellees raised the question, that as a dwelling house, it was entitled to the uses of the pond as waterfront property, and that the pond gave it much of its value. The pond was a made pond, constructed by means of a dam. This dam also provided water power for the electric lights in the house. If the appellants could drain the pond and open the dam, it would undoubtedly seriously affect the ordinary purposes to which the dwelling would be put. The court below apparently had this in mind when he incorporated in his decree the following statement as an addition to the 1.75 acres: "Together with such riparian rights, if any, as under the laws of the State of Maryland are incident or appurtenant to the land here decreed to be sold, and which, under such laws, pass with such land to and vest in the owner thereof as riparian rights in and to the waters, and in and to the lands under the waters, that border upon the said land here decreed to be sold." This statement is vague and indefinite, and scarcely satisfies the statute which authorizes the extension of the lien to the ground immediately adjacent to that covered by the building and belonging to the owner

which "may be necessary for the ordinary and useful purposes of such building." Code, 1939, Art. 63, Sec. 4. The court should designate definitely what rights in the pond or the dam are necessary for the use of the property as a residence, and those rights should go with the sale. However, this failure on the part of the court does not injure the appellants, because it does not authorize the trustee to sell anything but riparian rights, which the land would have in any event. According to the testimony, this pond is not navigable water within the usual definitions. *Day v. Day,* 22 Md. 530; *Mayor and City Council of Havre de Grace v. Harlow,* 129 Md. 265, 98 A. 852. The decree, therefore, adds to the 1.75 acres which the trustee can sell only the rights naturally appurtenant, if any, and the appellants are not hurt thereby. The appellees, who might be entitled to a more definite description of what would ordinarily go with the property, have not appealed from the decree.

We are unable to find any reversible error in the rulings or in the decree of the court below, and the decree, therefore, will be affirmed.

*Decree affirmed, with costs.*