## CRANE CO. *v.* ONLEY ET UX.
[No. 33, October Term, 1949.]

44

*Decided December 8, 1949.*

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Amos W. W. Woodcock,* with whom were *E. Dale Adkins, Jr.,* and *Woodcock, Webb, Bounds & Travers* on the brief, for the appellant.

*William H. Price* and *John L. Sanford, Jr.,* with whom were *Staton, Whaley & Price* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Crane Company, appellant, from a decree of the Circuit Court for Worcester County, setting aside a mechanics' lien filed by the appellant against the property of James S. Onley and Elizabeth B. Onley, his wife, appellees, in Worcester County, and enjoining appellant from enforcing that lien.

During the winter of 1947—1948, a dwelling house was erected on the property owned by the appellees, as tenants by the entireties. Specifications for plumbing and electrical work in the house were prepared by an architect and bids were sought for this work. A contract was entered into between Mr. James S. Onley with Mr. Leroy Stark for this plumbing and heating work according to those specifications. These two parties agreed orally to use material from Crane Company, appellant.

Mr. Onley paid Mr. Stark in eight payments from January 2, 1948 to March 27, 1948. Mr. Stark did not pay Crane Company, and on or about July 3rd, 1948, the appellant filed in the office of the Clerk of Court for Worchester County a mechanics' lien in the amount of $1562.85 for the materials sold to Stark against the real estate of the appellees, under the provisions of Code (1939), Article 63 (Mechanics' Liens). On August 6, 1948, the appellees filed against the appellant a bill of complaint asking that this mechanics' lien be declared null and void and expunged from the records, and that the appellant be enjoined from prosecuting any suit or action to enforce this lien. From a decree of the Circuit Court for Worcester County granting the relief prayed, an appeal is taken to this Court.

Mr. Onley testified that he had the following telephone conversation about the first of December, 1947, with Mr. Raymond Carey, the sales representative of the appellant for the Eastern Shore territory. "I called Mr. Carey on the 'phone and asked him if it was possible for our truck to pick up some of this material in Baltimore, which he said it was. And I also asked Mr. Carey, or told Mr. Carey I did not know Leroy Stark's credit standing; if it was not all right that I would send a check with our truck; any of the material sent by any other trucking firm could be sent C.O.D.—I would pay upon arrival. He told me that this had been discussed with their credit department and that it was perfectly all right—they had established a credit—and for me to pay Leroy Stark as per my contract." As a result of this conversation Mr. Onley sent his truck to Baltimore. The truck returned with almost all of the materials included in the mechanics' lien.

Mr. Carey's version of that conversation follows: "Well, Mr. Onley called me and said that the material that I had proposed to furnish was acceptable. Could he send his truck for it? And I said 'yes.' He said, 'Could I get it on Monday?' And I said 'yes.' He said, 'Now, I want

to be sure to get it. Will there be any tie-up so far as money is concerned?' And I said 'no.' I believe these words are fairly correct of the conversation that went on. 'No, that Mr. Stark has been set up on an open account with us and it will not be necessary at this time to send any money for it. Your truck can call for it just the same as if it was Mr. Stark calling for it.' " He further admitted that Mr. Onley offered to send the money at the time the truck was to pick up the material. He said: "At the time it was irrelevant to me because we had an open account set up, and even though he offered the money I was not in a position to accept it because we were dealing with Mr. Stark." He said that he did not remember any further conversation with Mr. Onley. He was present when the truck arrived at appellant's place of business in Baltimore. The appellant admits that "the version of Onley * * * and of Carey * * * differ only slightly." The appellees claim that the appellant, as a result of this conversation between Mr. Onley and Mr. Carey, is estopped from claiming the mechanics' lien here in question. With this contention of the appellees we agree.

Code 1939, Article 63, Section 3, relied on by the appellant, provides: "No person having such lien shall be considered as waiving the same by granting a credit or receiving notes or other securities, unless the same be received as payment or the lien be expressly waived, but the sole effect thereof shall be to prevent the institution of any proceedings to enforce said lien until the expiration of the time agreed upon." *Wix v. Bowling*, 120 Md. 265, 273, 87 A. 759.

In the case of *Bounds v. Nuttle*, 181 Md. 400, 30 A. 2d 263, 265, the appellants were desirous of building a residence on their property. Having heard of the appellees, they discussed with them a contract to build the house. The appellees testified that they did not build houses, but only furnished materials, and so informed the appellants. They admitted that they recommended the contractors to the appellants to build the

house. Having looked at some of the houses that the recommended contractors had built they accepted the appellees' recommendation, "met the contractors with an agent of the appellees on the premises, had some discussion with the agent as to the form of the contract to be entered into, and finally signed the contract with the contractors, on the premises, in the presence of the agent of the appellees. This contract was with the contractors alone. The appellees were not only not parties to it, but it provided that the contractors should furnish and pay for all the labor, materials, etc., necessary to construct, complete and deliver to the appellants, free from any claims or liens, a building shown by the plans and specifications." The contractors failed to pay the appellees for the material furnished and the appellees entered a mechanics' lien against the appellants' property and filed a bill of complaint for the enforcement of that lien. In this Court the appellants contended that the appellees were estopped from claiming any lien on the building. In holding that the appellees were not so estopped, and affirming the enforcement of the mechanics' lien, this Court said at page 406 of 181 Md., at page 266 of 30 A. 2d: "If their failure to protect themselves against an impecunious contractor causes them to have to pay twice for materials, it is their own fault. The mechanics' lien law was passed to cover just such a situation and to protect material men. The theory of it is that the owner gets the benefit of the materials, and he has control of the money. If he negligently and carelessly pays the money out to the contractor without taking precautions to see that it is applied to the payment of the materials which go in the building then he must stand the loss rather than the material man, who has no opportunity to protect himself once he has delivered the materials."

In the case at bar, from the testimony it appears that Mr. Onley, one of the appellees, did not negligently and carelessly pay the money to Stark, the contractor. On the other hand, he offered to pay the appellant at the

time most of the material was delivered and told appellant that any of the materials sent by any other trucking firm could be sent C.O.D. He was told, however, by the sales representative of appellant, and there is no contention that Mr. Carey was not authorized to so inform Mr. Onley, that the matter had been discussed with their credit department, that Mr. Stark had established a credit and either expressly or by implication to pay Stark as per the contract. Appellant contends that there is no evidence to show that the appellees relied on this conversation with Mr. Carey. When asked on cross-examination why he paid Stark the contract price without doing some checking, Mr. Onley replied: "That was the contract and what I was supposed to pay him, and I paid him." He was asked on direct examination why he did not make any inquiry of the Crane Company to ascertain whether it had been paid in full for the materials which went into the house. The appellant objected to this question and the objection was sustained. He evidently paid Stark without further investigation because the Crane Company's representative told him to pay Stark. Onley's action in paying Stark as per instructions from the appellant speaks louder than any words of Onley, that he did what appellant told him to do.

In the case of *Benson v. Borden*, 174 Md. 202, 198 A. 419, Judge Mitchell discusses the difference between waiver and estoppel, often used synonymously. He quotes at pages 219 and 220 of 174 Md., at page 427 of 198 A. from 40 Cyc. 255: "While waiver belongs to the family of estoppel, and the doctrine of estoppel lies at the foundation of the law of waiver, they are nevertheless distinguishable terms. * * * Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed. Waiver involves both knowledge and intention; estoppel may arise where there is no intent to mislead. Waiver depends upon what one himself intends to do; estoppel depends rather upon what he causes his adversary to do. Waiver involves

the acts and conduct of only one of the parties; estoppel involves the conduct of both. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position; an estoppel always involves this element. * * * Estoppel may carry the implication of fraud, waiver does not. A waiver may be created by acts, conduct or declarations insufficient to create a technical estoppel."

In the instant case it is unnecessary that we decide whether there was an express waiver of this mechanics' lien. Equitable estoppel operates in this case. Pomeroy in his *Equity Jurisprudence,* Fourth Edition, Volume II, Section 804, defines "equitable estoppel" as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting right which might have otherwise existed, either of property, or contract or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract or of remedy." Judge Bailey in the case of *Brenner v. Plitt,* 182 Md. 348, at page 364, 34 A. 2d 853, points out that this definition of equitable estoppel has been adopted by this Court in the following cases; *Rodgers v. John,* 131 Md. 455, 102 A. 549; *Pearre v. Grossnickle,* 139 Md. 1, 114 A. 725; *Benson v. Borden,* 174 Md. 202, 198 A. 419; *Rody v. Doyle,* 181 Md. 195, 29 A. 2d 290. See also *Price v. Adalman,* 183 Md. 320, 325, 326, 37 A. 2d 877.

According to the testimony, appellant by its voluntary action told Mr. Onley to pay Stark directly. Onley in good faith did exactly what appellant told him to do and relied upon the representation made to him by appellant. The appellant is thereby absolutely precluded both in law and in equity from asserting the mechanics' lien to which it might have otherwise been entitled. The decree will be affirmed.

*Decree affirmed, with costs.*