REISTERSTOWN LUMBER COMPANY
*v.* REEDER ET UX.

[No. 167, September Term, 1960.]

500

*Decided March 17, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, HORNEY and MARBURY, JJ.

*W. Lee Harrison,* with whom were *Richard C. Murray* and *George Barrett Johns* on the brief, for the appellant.

*Ralph G. Hoffman* and *Robert J. Cooke* for the appellees.

MARBURY, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Carroll County declaring that a mechanic's lien filed by the Reisterstown Lumber Company was null and void, and dismissing its cross bill for the enforcement of the lien.

This litigation began by the delivery of a notice of intention to claim a mechanic's lien by the appellant to the appellees on September 13, 1958. The notice stated the intention to claim a lien upon the real estate and improvements owned by the appellees, located in Carroll County, for the sum of $8,600.37 for building materials furnished within ninety days last past from that date, having been furnished to C. Myers Green, the contractor or builder. The notice was accompanied by a detailed invoice showing the nature of the materials delivered, the dates of delivery, and the charges therefor.

On January 9, 1959 the appellees filed a "Bill to Remove Cloud from Title" in the Circuit Court for Carroll County. This bill alleged the appellees' ownership of the property to be affected by the lien, the filing of the lien on the Mechanic's Lien Docket of Carroll County and contained a general allegation that the appellant should not be entitled to assert such a lien "having failed to comply with the purpose, intent and provisions of Article 63 of the 1957 Annotated Code of Maryland, relating to Mechanic's Lien." The appellant an-

swered the bill denying the allegation that it was not entitled to assert a lien and simultaneously filed a cross bill seeking enforcement of the lien. The appellees answered the cross bill alleging again that "the alleged mechanic's lien is of no binding force and effect." Testimony was taken on both the original and cross bills.

On June 23, 1960, the chancellor filed a written opinion holding that the appellant's lien must fall on the ground of equitable estoppel and entered a decree accordingly. The appellant challenges the correctness of the Court's finding on the issue of equitable estoppel and also raises in this court the issue of timeliness of the lien noted and the question of the amount of the lien. The last two issues were raised below by the appellees and evidence was taken concerning them, although they were not decided by the chancellor; but in the view we take of the case they require decision by this court under Maryland Rule 885.

We must first consider whether the appellant was estopped from asserting a mechanic's lien by virtue of two alleged conversations with the owners as to the "integrity" of the builder.

The appellees, Mr. and Mrs. Reeder, entered into a written contract with C. Myers Green for the construction of their residence on December 26, 1957—4 to 6 weeks *before* they had any conversation with the Reisterstown Lumber Company involving this matter. This contract called for a price on the basis of cost plus ten percent but not to exceed, however, the sum of $18,500.00. Article II of the contract called for substantial completion within one hundred working days and provided for progress payments, together with a final payment due thirty days after completion. Article IX required the contractor to re-execute any work that failed to conform to the requirements of the contract as well as to "remedy any defects due to faulty materials or workmanship which occur within a period of one year * * *. The provisions of this article to apply to work done by sub-contractors * * *". Under Article XII, the owner was entitled to withhold progress payments "on account of *defective work not remedied, liens filed,*

damage by the contractor to others not adjusted, *or failure to make payment properly, to sub-contractors or for material or labor."* (Emphasis supplied.) This article also provided that the making of final payment would constitute a waiver of all claims by the owners except those arising from unsettled liens or from faulty work. Article XVI provided that the final payment should not be due until a complete release of all liens arising out of the contract was delivered to the owner or receipts in full covering all labor and materials were delivered or a bond had been filed.

The Reeders not only directly negotiated and executed their contract with Green, but in fact Mr. Reeder suggested to Green that he deal with the appellant for his supplies, saying that he preferred that he would get his supplies from Reisterstown Lumber Company. Mr. Reeder first visited the appellant in January or the first week in February, 1958, and after his house had for some time been under construction. In fact the first materials were delivered on the Reeder job November 14, 1957. He stated that there were two reasons for this visit, one relating to a type of window lock with which he was concerned. The other alleged reason was that he had in fact already paid Green $3,000 (this would appear to have been payment No. 1 for the foundation, laying sub floor, etc.). He had not received *"any receipts from any sub-contractors of any kind."* He also expressed his reason for going there by saying that he wanted to discuss Mr. Green's "integrity", although he never explained what he meant by that phrase, and he admitted that he knew the lumber company would be "my biggest bill." He said that he had no serious reason to doubt Mr. Green's "integrity" but that it was just a matter of "normal precaution." In response to this inquiry concerning Green's integrity, Mr. Reeder indicated that Charles Forbes, Jr., an official of the appellant, stated that Green was "as good as gold" and "you don't have to worry about him at all. He has an account here, a running account, his balance runs from six to eight thousand dollars all the time and he pays us regularly, and we have no trouble with him and you have nothing to worry about." He then

said that he felt relieved and "I don't have to worry too much about the lumber company."

With no further inquiry of or conversation with the appellant the appellees paid a total of $12,500.00 between February 25, 1958, and May 5, 1958, despite the fact that they never received *any* bills or invoices from any sub-contractors nor did they receive bills or receipts from material suppliers. Mr. Reeder never claimed that he made these payments during the four months period because of reliance upon any statement of Mr. Forbes, Jr. On the contrary, he testified that during this period he spoke with other sub-contractors regarding some difficulties he had with Green continuing on the job. Instead of frankly asking about Green's financial status, Mr. Reeder said that he didn't want to give Green a bad name by asking "Is Greenie O. K." but merely made general expressions such as "How are you getting along with Greenie?" When informed by the other sub-contractors that they had not billed Green Mr. Reeder seemed to be relieved.

It is clear and uncontradicted from the testimony that Mr. Green, the builder, had a cost of $26,000.00 for this home despite the contract ceiling of $18,500.00; that the appellant furnished approximately $8,600.00 worth of materials, for which it had not been paid. Mr. and Mrs. Reeder failed to withhold sufficient money to pay what they knew to be the largest bill on the job.

In addition to the conversation with Mr. Forbes, Jr., during the latter part of January or first of February, concerning which the younger Forbes testified he had no recollection, the other conversation, which the appellees claim constituted the equitable estoppel in this case, took place on July 12, 1958. On this date the Reeders had paid $15,500.00 to Green and had received an invoice from Green dated July 8, for payment No. 6 which was due upon substantial completion of the building. An additional sum of $1,500.00 would have been due under the contract within thirty days from the date of substantial completion (this has never been paid but is still retained by the Reeders) subject to the provisions as to defective work, release of liens, payments of sub-contractors, etc.

Mr. Reeder testified that he went to the appellant's place of business for the purpose of inquiring about delivery of a roto-lock and that he also carried a screen with him in which the wire had apparently been pushed to one side. He did not say that he went for the purpose of discussing Green's financial status or the payment of the appellant's account. He testified that his wife accompanied him on the trip but remained in the car and that he again spoke with the same gentleman as he did in the preceding January or February, obtained another screen and also received delivery of the roto-lock that he desired. Mr. Reeder said that he then commented upon the fact that he was having difficulty to get Mr. Green to do things and that he then asked: "Are you sure he is all right like you told me he was?" While returning to the car Mr. Reeder said that Mr. Forbes, Jr., stated: "You don't have anything to worry about Greenie, that he pays us, he has been dealing with us for years and not to worry about it." On cross-examination Mr. Reeder indicated that they did not discuss the matter as "deeply" as on the occasion in January or February. At the same point in his testimony Reeder stated that he thought Reisterstown Lumber Company was being paid, although admitting that he knew that Green had not received any bills from suppliers. Mrs. Reeder testified substantially corroborating her husband as to the July conversation.

Following the conversation of July 12 Mr. Reeder delivered a check to the builder on July 14, in the amount of $1,500.00, thus bringing the total paid to $17,000.00. It is clear that the conversation of the 12th had nothing to do with the payment of the 14th, because Mr. Reeder admitted that the check used for that payment had been written on July 10—two days before the alleged conversation—and was ready to give it to him at that time but Green had not shown up until Monday, July 14.

The chancellor in holding that the appellants were equitably estopped to assert the lien relied solely upon the case of *Crane Co. v. Onley,* 194 Md. 43, 69 A. 2d 903, although this court had already decided the case of *Johnson Lumber Co.*

*v. Magruder,* 218 Md. 440, 147 A. 2d 208, in which it held that the doctrine of equitable estoppel invoked in the *Onley* case was not applicable to the facts of that case in reversing the lower court, which thought that the *Onley* case was controlling.

The two conversations between the Reeders and Forbes, upon which the appellees base their claim of estoppel, form nowhere near as strong a basis for invoking this doctrine as even did those in the *Magruder* case. We will not unduly prolong the length of this opinion by again distinguishing the facts in the *Onley* case from those in the instant case, but adopt as applicable here the full and careful discussion of the principles involved by Judge Prescott in speaking for this court in the case of *Johnson Lumber Company v. Magruder,* supra.

We think that the chancellor clearly misconstrued both the facts and the law in decreeing that the appellant's mechanic's lien was null and void and of no effect.

One of the contentions made by the appellees in the lower court, but not decided by the chancellor, was that the notice of intention to claim a mechanic's lien was not given to the owners within ninety days after furnishing the materials as required by Code (1957), Article 63, Section 11.

As shown by the invoice attached to the notice, a second door was delivered to the job on June 17, 1958, and a screen and chrome roto-lock operator were called for by and delivered personally to the appellees on July 11, or 12, 1958—according to the testimony—all three dates being within ninety days of the time of serving the lien notice on September 13, 1958. All three of these items were replacements of material previously delivered and which the owners or builder desired to be substituted for defective items.

It should be observed that the statute makes no exception with respect to items delivered for "replacement" or substitution for previously delivered, but defective items.

It appeared that the appellees were trying to bring the instant case within those cases where the lien period has already fully expired or a supplier or builder, near the end of

the period, does a trifling amount of work as a mere subterfuge to extend the lien period. They contended that the ninety-day period began to run from June 2, 1958, which was the date of the last delivery prior to those just mentioned, so that the notice served on September 13, 1958, was too late.

The appellant contended that even assuming all three of these items had defects of manufacture for which it was liable and for which the appellant could have been required to make replacement free of any charge whatsoever, *such replacement made in good faith and at the insistence of the owner or his builder* are proper items to be considered for the purpose of ascertaining the last furnishing of materials within the meaning of Section 11, supra.

It should be observed that the purpose of the mechanic's lien law is to protect the materialmen, and this law is to be construed in the most liberal and comprehensive manner in favor of mechanics and materialmen. *T. Dan Kolker, Inc. v. Shure,* 209 Md. 290, 296, 121 A. 2d 223, and cases cited therein. The purpose is to protect the materialmen in situations where the owners negligently pay the builder to the detriment of the materialmen. *Bounds v. Nuttle,* 181 Md. 400, 406, 30 A. 2d 263. However, it is well settled that where the time allowed for filing a mechanic's lien has begun to run, the claimant cannot thereafter extend the time within which the lien may be filed by doing or furnishing small additional items under the guise of the original contract. This principle also applies to the notice requirement of the statute. *District Heights Apts. v. Noland,* 202 Md. 43, 95 A. 2d 90. Nor will the claimant prevail where his intention is to save or restore a right which is lost or imperiled where the "additional items" are furnished without the knowledge, request, or consent of the owner. *District Heights Apts. v. Noland, supra; Harrison v. Stouffer,* 193 Md. 46, 65 A. 2d 895; *T. Dan Kolker, Inc. v. Shure, supra.*

Applying the law above stated to the facts in the instant case we are of the opinion that the deliveries made on June 17, and July 11, 1958, were in fulfillment of a single contract which was within the contemplation of the parties and were

done with the knowledge and consent and at the request of the owner and builder. It is obvious from the record that on June 2, 1958, the contract was not completed. In other words, the supplier in this case had not fully performed his contract. The defective door needed to be replaced, as did the chrome roto-lock operator, and the Anderson flexivent screen. If the appellant failed to do so he would have been legally liable for damages. Moreover, the replacements were made at the specific request of the appellees. That the appellant acted in good faith and not to circumvent the statute is evidenced by the fact that the door was ordered about May 1 and had to be specially ordered from a manufacturer in the Middle West at a time when the house was not completed and when deliveries were being continually made pursuant to the contract.

Finding all deliveries made pursuant to one complete contract we find no merit in this contention of the appellees. Hence the mechanic's lien was not defective.

There remains to be considered the dispute between the parties as to the amount of the lien. The full amount claimed was $8,600.37. At the trial below it was agreed that the appellees were entitled to a credit of $23.58, which was an overpayment by Green to the appellant on another job. We think that the appellees are entitled to be allowed in addition the charges made for the replacement of the door in the amount of $58.60, the Anderson flexivent screen $4.20, and for one roto-lock operator in the amount of $11.00, making a total of $97.38, because we consider that these items were defective and their replacements were not properly chargeable to the appellees, since the original items were previously included in the invoices. The lien should have been allowed in the net amount of $8,502.99, with interest from December 4, 1958, the date upon which the lien was filed.

The appellees for the first time in their brief in this court contended that the appellant could not assert its lien against the property of the owners, when the contract upon which the appellant relies was entered into by only one of the owners and there is no evidence to indicate that the other owner participated even in negotiations prior to the contract signing

or subsequent thereto. This contention was abandoned in oral argument by appellees' counsel and requires no consideration.

*Decree reversed and cause remanded for entry of decree dismissing bill to remove cloud from title and enforcing lien in favor of appellant in the sum of $8,502.99, with interest from December 4, 1958; the appellees to pay the costs.*