## THE J. F. JOHNSON LUMBER COMPANY
### *v.* MAGRUDER

[No. 80, September Term, 1958.]

*Decided December 23, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT and HORNEY, JJ.

*David Macdonald,* for appellant.

*Ralph W. Powers,* for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Prince George's County declaring a mechanics' lien filed by

appellant invalid and expunging the same from the records of said Court, dismissing the cross-bill of the appellant, and directing the appellee to pay the appellant the sum of $1,115.33 which the appellee owed to the contractor, Theodore J. Johnson.

On or about September 26, 1956, the appellee, M. Hampton Magruder, a well known and highly respected member of the Maryland Bar of many years standing, entered into a contract with one Theodore J. Johnson whereby Johnson agreed, for the price of $27,111, to construct a one-story brick building on a certain parcel of ground owned by the appellee in Prince George's County. Within a few days, the contractor commenced construction and the house was finished in August of 1957.

During the period from October 1, 1956, to July 25, 1957, the appellant, hereinafter sometimes referred to as the "Lumber Company," furnished lumber and other building materials to Johnson under one continuous contract for the construction of the house in question at prices conceded to be reasonable and proper. The total price of the materials supplied by the appellant was $9,569.86. Toward this amount, Johnson paid the Lumber Company $1,446.35 on November 16, 1956, and $500 some time after August 22, 1957, leaving a balance due of $7,623.51.

The appellant gave due notice of its claim to the appellee on August 19, 1957, and filed its mechanics' lien on August 22, 1957. There is no dispute as to any of the foregoing facts.

It appears that prior to September of 1956 Mr. Magruder decided to build a dwelling house for his daughter-in-law and grandchildren. He retained the services of an architect. Friends of Mr. Magruder in Anne Arundel County told him of a man named Theodore J. Johnson, who lived in Anne Arundel County and had done some work for them, and they recommended him. Mr. Magruder testified that after conferring with Johnson he placed a telephone call to Mr. Carroll Lee, manager of the Annapolis yard of the appellant. There was a serious dispute as to whether this telephone call

was placed before or after Mr. Magruder signed the construction contract with Johnson. The Court found that the telephone call was made before the contract was signed—as claimed by Mr. Magruder—and that the conversation was substantially as related by him. Appellant concedes that it cannot say that this finding of fact was clearly wrong.

This conversation, as given by Mr. Magruder, was, in part, as follows:

> " 'Well,' I said, 'Carroll, I am about to build a home over on Wilson Lane in Upper Marlboro, and I have been talking to a Theodore Johnson who has been recommended to me by Page Bowie and his wife as a good builder and I want to know what you know about him.'
>
> "And he said, 'Well, Mr. Mac, I have known him for thirty years. What do you want to know about him?'
>
> " 'Well,' I said, 'I want to be perfectly certain that if I were to sign a contract with him I want to take all the precautions necessary that I would be safe in not exacting from Johnson a completion bond.'
>
> * * *
>
> "He said, 'Mr. Mac, we have been doing business with Theodore Johnson for 20 years. We have got a high regard for him and in my judgment I don't think you need worry about that. And so far as we are concerned, we will give him all the credit he needs.' "

Mr. Magruder further testified that because of this statement he "was lulled into security" and therefore did not require Johnson to furnish a completion bond.

The construction contract between Mr. Magruder and Johnson, however, provided that the contract price was to be paid to the contractor in four equal installments as the work progressed, and:

> "That within one week subsequent to the payment

of any quarterly payment called for in this Contract shall have been made the said Contractor shall present to the said Owner receipts, or evidence of payment, showing all labor done on said building and all materials furnished for said building have been paid in full."

The contract was prepared by Mr. Magruder and the clause quoted above was inserted at his suggestion; the contract being on a printed form with the clause quoted above typed in.

Mr. Magruder made his first quarterly payment in the amount of $6,775 to the contractor on November 13, 1956. This payment was due upon completion of the foundation and a few days later Johnson delivered to Mr. Magruder a release of liens, with one signature on it, the appellant's.

It will be noted that this release fell far short of what was required under the contract. Within one week after a payment Johnson was duty bound to produce, and Mr. Magruder was entitled to demand, receipts or other evidence showing that *all* charges for labor and material incurred up to that time had been paid. The release which Johnson delivered to Mr. Magruder and which Mr. Magruder accepted, indicated only that one charge—in an unstated amount—had been paid.

Mr. Magruder testified that when he received this release he did not know and he did not inquire how much had been paid to the Lumber Company; and that he did not know and he did not ask Johnson whether there were other bills which had been paid, or whether there were any charges which were not paid. He knew that work and material, other than that supplied by appellant, had gone into the building, but he made no request for receipts or other evidence showing that the cost of such work and material had been paid.

Mr. Magruder made another payment to Johnson on December 13, 1956, and soon thereafter Johnson delivered another release of liens to him. Again, Mr. Magruder did not know and he did not ask how much Johnson had paid out; he did not ask Johnson for vouchers or other evidences of

payment; he did not inquire whether there were any bills which had not been paid. He had "no idea" at that time how much Johnson had paid out.

In February, 1957, Mr. Magruder made two more payments to Johnson, thereby completing the payments due under the second draw; soon thereafter Johnson delivered another release of liens.

After two or three questions directed to Mr. Magruder to ascertain whether he took any steps at this time to require Johnson to comply with the provisions of the contract, Mr. Magruder's counsel objected and the Court sustained the objection, stating, "Whether or not Mr. Magruder policed the prime contractor is entirely beside the point." Later in the trial, counsel for the appellant tried to resume this line of questioning, but upon objection the Court again ruled that any such testimony was irrelevant.

The testimony that was admitted showed that Mr. Magruder paid little or no attention as to whether Johnson was paying the bills for labor and material until construction of the house came to a standstill. Mr. Magruder testified, "Everything had stopped * * *"; the plumber, the heating contractor, and the electrician had quit the job; work had stopped completely. It appears that this occurred sometime between June 5 and August 3, 1957. It was at that time that Mr. Magruder began to look into the matter and learned for the first time that there were several bills which were due and owing. On August 3, 1957, he "took the matter over" and began payment of the various charges for labor and material which Johnson had failed to pay.

The chancellor held that the appellant was estopped from asserting its mechanics' lien, and ordered it expunged from the records of the court. He also dismissed the appellant's cross-bill, and directed the appellee to pay unto the appellant the sum of $1,115.33, which the appellee held to the credit of Johnson.

The chancellor thought that the case of *Crane Co. v. Onley,* 194 Md. 43, 69 A. 2d 903, was controlling. He held that the

facts established an equitable estoppel which prevented the appellant from asserting its mechanics' lien.

In 3 Pomeroy's *Equity Jurisprudence,* sec. 804 (5th Ed.) equitable estoppel is defined as follows:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

This definition has been quoted, with approval, by this Court on many occasions. Among the cases doing so, see *Brenner v. Plitt,* 182 Md. 348, 364, 34 A. 2d 853; *Crane Co. v. Onley, supra,* at p. 50.

We are unable to find from the facts in this suit a situation that makes it appropriate to apply the doctrine of estoppel. It will be noted that under the provisions of the contract between Mr. Magruder and Johnson, Mr. Magruder had the right, within one week after any quarterly payment, to demand of, and receive from, Johnson receipts or evidences of payment showing that all labor performed and materials furnished had been paid in full. This afforded him an opportunity to have prevented a loss to anyone (possibly excepting for any one payment) by the exercise of a small degree of diligence.

We think the decision of the suit at bar is controlled by the principles enunciated by this Court in *Bounds v. Nuttle,* 181 Md. 400, 30 A. 2d 263. There the owners of property were desirous of building a residence on it. They had heard of the plaintiffs—the materialmen—and went to see them for the purpose of discussing a contract to build. The plaintiffs told the owners that they did not build houses, but only furnished materials. However after considerable discussion

about the contractors, the kind of work they had done on other buildings, and the kind of contract that was to be signed, the plaintiffs recommended the contractors to the owners. When the contractors failed to pay the plaintiffs for materials furnished by them, they filed a mechanics' lien against the owners' property. In holding that the plaintiffs were not estopped from asserting their mechanics' lien, the Court used, at p. 406, this language:

> "If their failure to protect themselves against an impecunious contractor causes them to have to pay twice for materials, it is their own fault. The mechanic's lien law was passed to cover just such a situation and to protect material men. The theory of it is that the owner gets the benefit of the materials, and he has control of the money. If he negligently and carelessly pays the money out to the contractor without taking precautions to see that it is applied to the payment of the materials which go in the building, then he must stand the loss rather than the material man, who has no opportunity to protect himself once he has delivered the materials."

The *Onley* case, *supra,* which the chancellor thought was controlling, was decided after *Bounds v. Nuttle, supra.* In that suit, the owners offered to pay the material-man at the time of the obtaining of certain material furnished or that the material-man could send it C. O. D. and it would be paid for by the owner on delivery. The material-man informed the owner that the matter had been discussed with their credit department; that the contractor had established a credit on an open account; and that it was "perfectly all right" for the owners to pay the contractor according to the contract. In holding that the material-man was estopped from establishing a mechanics' lien, the Court distinguished the *Bounds* case, *supra,* and, in doing so, was careful to point out that the owners "did not negligently and carelessly pay the money" to the contractor.

The whole doctrine of equitable estoppel is a creature of

equity and governed by equitable principles. It was educed to prevent the unconscientious and inequitable assertion of rights or enforcement of claims which might have existed or been enforceable, had not the conduct of a party, including his spoken and written words, his positive acts and his silence or negative omission to do anything, rendered it inequitable and unconscionable to allow the rights or claims to be asserted or enforced. Hence, one who claims the benefit of an estoppel must not only be free from fraud in the transaction, but he must have acted with good faith and *reasonable diligence;* otherwise no equity arises in his favor. 3 Pomeroy's, *op. cit.,* p. 236; 19 Am. Jur., *Estoppel,* sec. 63. Cf. 31 C. J. S. *Estoppel,* § 148 and 3 Pomeroy's, *op. cit.,* § 810. In denying a request for the application of the doctrine of estoppel in the case of *Rodgers v. John,* 131 Md. 455, 102 A. 549, 465, this Court quoted former Chief Judge Boyd as follows: "It is getting to be too common to have parties ask the Courts to do what they could have done themselves, if they had exercised ordinary prudence; or, to state it in another way, to ask Courts to undo what they have done by reason of their own negligence."

In this suit, it apparently is the theory of the appellee that in his conversation with Lee, who was an officer of the appellant, Lee, on behalf of the appellant, assumed the entire credit risk of Johnson on the appellee's job. The language relied upon is when Lee said: "Mr. Mac, we have been doing business with Theodore Johnson for 20 years. We have a high regard for him and in my judgment I don't think you need worry about that [requiring a completion bond]. And as far as we are concerned, we will give him all the credit he needs." We have no doubt as to the accuracy of all of Mr. Magruder's testimony. We are unable, however, to conclude that by this language the appellant assumed the entire credit risk of Johnson on Mr. Magruder's building to the exclusion of the protection of a possible mechanics' lien. The first part of the statement is merely the expression of an opinion; and the latter part is perfectly consistent with the customary and usual extension of credit by a material-man

to a builder which includes the possibility that a mechanics' lien may have to be filed. The appellee, likewise, lays great stress upon the fact that the appellant had a judgment against Johnson, although he does not mention this in his bill of complaint. There are many men of impeccable business integrity who owe much more than the amount of the judgment owed by Johnson. In any event, this judgment would have caused no loss to the appellee had he exercised a small amount of diligence and care. The appellee had it within his power, by the express terms of his contract, to protect himself and all others concerned by the simple expedient of demanding receipts or evidences of payment for the labor done and materials furnished on the dwelling constructed for him. We think that ordinary care and caution and reasonable diligence called upon him to take this precaution, if he desired to invoke the doctrine of equitable estoppel. The decree must, therefore, be reversed for the entry of a decree in accordance with this opinion.

*Decree reversed, and cause remanded for the entry of a decree in accord with the opinion; the appellee to pay the costs.*